Aisling S. Gilliland, Esq. (SBN 163321)
THE GILLILAND FIRM
402 West Broadway, Suite 1760
San Diego, California 92101
Tel: (619) 87-1580
E-fax: (619) 878-6630

Corey P. Hanrahan, Esq. (SBN 256835)
THE HANRAHAN FIRM
402 West Broadway, Suite 1760
San Diego, California 92101
Tel: (619) 377-6522
E-fax: (619) 377-6662

Attorneys for Plaintiff
GENE SUGIMOTO

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENE SUGIMOTO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>INTER-CON SECURITY SYSTEMS, INC., a California corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. '19cv0025 DMS (BLM)<br><br>**DECLARATION OF AISLING S. GILLILAND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  November 15, 2019<br>Time:  1:30 p.m.<br>Courtroom:  13A(13th Floor)<br><br>[Assigned to the Hon. Judge Dana M. Sabraw; Mag. Judge Barbara L. Major] |

I, Aisling S. Gilliland, declare:

1.     I am an attorney with The Gilliland Firm and am counsel of record for Plaintiff in this case. I am admitted to practice law in this Court and in all of the courts of the State of California.  I have personal knowledge of the following and if so called upon, could and would testify thereto.

///

1

DECLARATION OF AISLING S. GILLILAND
'19cv0025 DMS (BLM)

THE GILLILAND FIRM
402 WEST BROADWAY, SUITE 1760
SAN DIEGO, CALIFORNIA 92101

2.   Attached hereto as Exhibit "1" is a true and correct copy of Defendant's Responses to Special Interrogatories in this case, verified by Richard Stack.

3.   Attached hereto as Exhibit "2" is a true and correct copy of the relevant portions of the deposition transcript of Inter-Con's Chief Operating Officer, Richard Stack, along with the court reporter's certification of the transcript of the deposition.

4.   Attached hereto as Exhibit "3" is a true and correct copy of the May 8, 2009 iLetter from Stephen H. Lee, M.D. which Plaintiff submitted to Akal Security.  This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶3.

5.   Attached hereto as Exhibit "4" is a true and correct copy of the May 14, 2014 letter from Daniel S. Hall, USMS to Jerry Neville, Inter-Con Security Systems, Inc.  This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶5.

6.   Attached hereto as Exhibit "5" is a true and correct copy of Plaintiff's August 25, 2010 Medical Review Form by F. Rosenberg, M.D.  This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶6.

7.   Attached hereto as Exhibit "6" is a true and correct copy of Plaintiff's June 18, 2011 Medical Review Form by L. Hutchinson, M.D.  This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶7.

8.   Attached hereto as Exhibit "7" is a true and correct copy of Plaintiff's February 26, 2014 Medical Review Form by H. Goldhagen, M.D.  This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶8.

9.   Attached hereto as Exhibit "8" is a true and correct copy of the December 1, 2014 facsimile and letter Plaintiff received from Inter-Con regarding his

THE GILLILAND FIRM
402 WEST BROADWAY, SUITE 1760
SAN DIEGO, CALIFORNIA 92101

2

MRF deadline with Medical Review Form attached. This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶9.

10. Attached hereto as Exhibit "9" is a true and correct copy of Gene Sugimoto's December 3, 2014 note to Dr. Spees. This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶10.

11. Attached hereto as Exhibit "10" is a true and correct copy of the David N. Spees, M.D. letter dated December 9, 2014, with attachment. This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶10.

12. Attached hereto as Exhibit "11" is a true and correct copy of the January 30, 2015 Medical Review Form by H. Goldhagen, M.D. This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶11.

13. Attached hereto as Exhibit "12" is a true and correct copy of the February 23, 2015 facsimile transmittal and letter re MRF Deadline Gene Sugimoto received from Inter-Con. This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶13.

14. Attached hereto as Exhibit "13" is a true and correct copy of the note Plaintiff Gene Sugimoto wrote to Melvin Roberts dated March 11, 2015. This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶14.

15. Attached hereto as Exhibit "14" is a true and correct copy of the USMS Medical Expense Pre-Authorization Form. This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶14.

///

DECLARATION OF AISLING S. GILLILAND
'19cv0025 DMS (BLM)

THE GILLILAND FIRM
402 WEST BROADWAY, SUITE 1760
SAN DIEGO, CALIFORNIA 92101

16. Attached hereto as Exhibit "15" is a true and correct copy of the note Plaintiff sent to Inter-Con seeking subsequent reimbursement. This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶15.

17. Attached hereto as Exhibit "16" is a true and correct copy of the Inter-Con email exchange regarding Plaintiff's medical expense authorization. These documents were produced by Plaintiff in discovery and were identified during the deposition of Richard Stack, Exhibits "4" and "7."

18. Attached hereto as Exhibit "17" is a true and correct copy of the memorandum Plaintiff sent to Melvin Roberts dated April 6, 2015. This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶17.

19. Attached hereto as Exhibit "18" is a true and correct copy of the email dated May 12, 2015 from Mark Cook "To all concerned." This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Mark Cook, ¶7.

20. Attached hereto as Exhibit "19" is a true and correct copy of the May 25, 2018 U.S. Equal Opportunity Commission "Determination" Plaintiff received from the EEOC in response to his December 16, 2015 charge. This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶21.

21. Attached hereto as Exhibit "20" is a true and correct copy of the April 27, 2015 Notice of Termination Plaintiff received from Inter-Con. This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶19.

22. Attached hereto as Exhibit "21" is a true and correct copy of the April 20, 2015 Memorandum from Plaintiff to Melvin Roberts. This document was

///

produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶18.

23. Attached hereto as Exhibit "22" is a true and correct copy of the May 5, 2015 "Progress Note" Plaintiff received from Stephen H. Lee, M.D. This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶20.

24. Attached hereto as Exhibit "23" is a true and correct copy of Plaintiff's EEOC Charge of Discrimination dated December 16, 2015. This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶22.

25. Attached hereto as Exhibit "24" is a true and correct copy of Inter-Con's letter to the EEOC dated January 22, 2016. This document was produced by Defendant in discovery.

26. Attached hereto as Exhibit "25" is a true and correct copy of an Acknowledgement of Conditions of Court Security Officer Eligibility dated June 20, 2014. This document was produced by Plaintiff in discovery and is authenticated by the Declaration of Gene Sugimoto, ¶23.

Executed this 31st day of October, 2019, at San Diego, California.

Aisling S. Gilliland

THE GILLILAND FIRM
402 WEST BROADWAY, SUITE 1760
SAN DIEGO, CALIFORNIA 92101

EXHIBIT 1

Cheryl Johnson-Hartwell, (SBN 221063)
E-mail:  cjohnson-hartwell@bwslaw.com
Mitchell A. Wrosch (SBN 262230)
E-mail:  mwrosch@bwslaw.com
Lindsay M. Samuel (SBN 320075)
E-mail:  lsamuel@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, CA  90071-2953
Tel:  213.236.0600; Fax: 213.236.2700

Attorneys for Defendant,
INTER-CON SECURITY SYSTEMS, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENE SUGIMOTO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>INTER-CON SECURITY SYSTEMS, INC.,  a California corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.  3:19-cv-00025-DMS-BLM<br><br>**DEFENDANT, INTER-CON SECURITY SYSTEMS, INC.'S RESPONSES TO PLAINTIFF, GENE SUGIMOTO'S SPECIAL INTERROGATORIES, SET ONE** |

REQUESTING PARTY :     Plaintiff, GENE SUGIMOTO

RESPONDING PARTY :     Defendant, INTER-CON SECURITY SYSTEMS, INC.

SET NO.                           One

Pursuant to Federal Rule of Civil Procedure 33, Defendant INTER-CON

SECURITY SYSTEMS, INC. ("Inter-Con") hereby responds and objects to

Plaintiff GENE SUGIMOTO ("Plaintiff") Interrogatories, Set One, as follows:

///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

CASE NO.: 3:19-CV-00025-DMS-BLM
DEFENDANT'S RESPONSES TO
SPECIAL INTERROGATORIES, SET 1

PRELIMINARY STATEMENT

1.     Inter-Con has not yet completed discovery relating to this case, and investigation of the facts therefore is continuing and will continue to and throughout the trial of this action.  Inter-Con's responses to Plaintiff's Interrogatories, Set One, therefore are made without prejudice to Inter-Con's right to introduce any and all documents and other evidence of any kind in the proceedings in this action.

2.     Inter-Con has responded to Plaintiff's Interrogatories, Set One, as it interprets and understands each Interrogatory made therein.  If Plaintiff subsequently asserts an interpretation of any Interrogatory that differs from the understanding of Inter-Con, then Inter-Con reserves the right to supplement its objections and/or responses.

3.     Each Response herein is made subject to all appropriate objections (including, but not limited to, objections concerning competency, relevance, materiality, propriety, and admissibility), which would require the exclusion of any information or thing at the time of trial.  All such objections and grounds therefore, are reserved and may be interposed at the time of trial.

4.     Except for facts explicitly admitted herein, no admission of any nature whatsoever is to be implied or inferred from these Responses.  The fact that Inter-Con has responded to an Interrogatory should not be taken as an admission, or a concession of the existence, of any fact set forth or assumed by such Interrogatory, or that such Response constitutes evidence of any fact thus set forth or assumed.

5.     All Responses must be construed as given on the basis of present recollection.

6.     Inter-Con's responses herein to Plaintiff's Interrogatories – Set One, are for Inter-Con and for no other person or entity.

///

///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

CASE NO.: 3:19-CV-00025-DMS-BLM
DEFENDANT'S RESPONSES TO
SPECIAL INTERROGATORIES, SET 1

**RESPONSE TO SPECIAL INTERROGATORIES**

**SPECIAL INTERROGATORY NO. 1:**

State any and all reasons YOU terminated Plaintiff's employment.

**RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

Inter-Con contracted with the United States Marshals Service ("USMS") to provide security services at the United States District Court for the Southern District of California ("USDCSD"). Inter-Con employed Plaintiff to work as a Court Security Officer at the USDCSD. The USMS requested that Plaintiff provide specific medical information pertaining to his history of obstructive sleep apnea, and the USMS provided Plaintiff with a deadline to provide the information. Plaintiff was non-compliant with the requests, and on April 27, 2015, the USMS determined that Plaintiff was not qualified to perform as a Court Security Officer. Plaintiff's employment was subsequently terminated because he was deemed not qualified to perform as a Court Security Officer, the position that Inter-Con hired Plaintiff to perform.

**SPECIAL INTERROGATORY NO. 2:**

IDENTIFY any and all person(s) involved in the decision to terminate Plaintiff's employment.

**RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

Inter-Con objects to this Interrogatory on the grounds that it is vague and ambiguous as to the meaning of "involved."

Subject to this objection, Inter-Con responds as follows:  Dan Ryan, former Vice President for Operations; Bret Lockhart, former Contract Manager; and Melvin Roberts, former District Supervisor, Southern District of California.

**SPECIAL INTERROGATORY NO. 3:**

IDENTIFY all communications wherein terminating Plaintiff's employment

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

CASE NO.: 3:19-CV-00025-DMS-BLM
DEFENDANT'S RESPONSES TO
SPECIAL INTERROGATORIES, SET 1

1  was discussed.

2  **RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

3       Inter-Con objects to this Interrogatory on the following grounds:  it is vague

4  and ambiguous as to the meaning of "COMMUNICATIONS" and "discussed."

5  Inter-Con will treat this as a request to identify communications by Inter-Con

6  management-level employees occurring prior to Plaintiff's termination on April 27,

7  2015.

8       Subject to these objections, Inter-Con responds as follows:  Email from Leah

9  Sherman to Lisa Brown, Lena Horvat, Dan Ryan, Bret Lockhart dated April 27,

10 2015 and email from Dan Ryan to Bret Lockhart, Melvin Roberts dated April 27,

11 2015.

12

13 **SPECIAL INTERROGATORY NO. 4:**

14       IDENTIFY all documents that were relied upon, in whole or in part, in the

15 decision to terminate Plaintiff's employment.

16 **RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

17       Inter-Con objects to this Interrogatory on the grounds that it is vague and

18 ambiguous as to the meaning of "relied upon."

19       Subject to this objection, Inter-Con responds as follows:  Inter-Con's

20 Contract with USMS, Plaintiff's Medical Review Form dated January 30, 2015,

21 Plaintiff's Medical Review Former dated November 14, 2014 and an email from

22 Leah Sherman, Contractor, Project Support Services at USMS to Dan Ryan dated

23 April 27, 2015.

24

25 **SPECIAL INTERROGATORY NO. 5:**

26       State any and all COMPLAINT(s) made about Plaintiff.

27 **RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

28       Inter-Con objects to this Interrogatory on the following grounds: (1) it is

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 4 -

CASE NO.: 3:19-CV-00025-DMS-BLM
DEFENDANT'S RESPONSES TO
SPECIAL INTERROGATORIES, SET 1

1  vague and ambiguous as to the meaning of "COMPLAINT." While the term is

2  defined in Plaintiff's instructions, the definition is unintelligible in the context of

3  this Interrogatory; (2) it is not proportional to the needs of the case because the

4  requested information is not important to resolving the issues in this action because

5  the Interrogatory is not limited in time, or to complaints that are relevant to the

6  claims and/or causes of action in the Complaint.

7      Subject to these objections, Inter-Con responds as follows:  None.

8

9  **SPECIAL INTERROGATORY NO. 6:**

10      IDENTIFY any and all PERSON(s) who made COMPLAINT(s) about

11  Plaintiff.

12  **RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

13      Inter-Con objects to this Interrogatory on the following grounds: (1) it is

14  vague and ambiguous as to the meaning of "COMPLAINT." While the term is

15  defined in Plaintiff's instructions, the definition is unintelligible in the context of

16  this Interrogatory; (2) it is not proportional to the needs of the case because the

17  requested information is not important to resolving the issues in this action because

18  the Interrogatory is not limited in time, or to complaints that are relevant to the

19  claims and/or causes of action in the Complaint.

20      Subject to these objections, Inter-Con responds as follows:  None.

21

22  **SPECIAL INTERROGATORY NO. 7:**

23      State all of YOUR perceived deficiencies in Plaintiff's job performance at

24  any time during his employment.

25  **RESPONSE TO SPECIAL INTERROGATORY NO. 7:**

26      Inter-Con objects to this Interrogatory on the following grounds: (1) it is

27  vague and ambiguous as to the meaning of "deficiencies" and "job performance" as

28  the term is not defined; (2) it is not proportional to the needs of the case because the

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES
- 5 -
CASE NO.: 3:19-CV-00025-DMS-BLM
DEFENDANT'S RESPONSES TO
SPECIAL INTERROGATORIES, SET 1

1  requested information is not important to resolving the issues in this action because
2  the Interrogatory is not limited in time.

3       Subject to these objections, Inter-Con responds as follows:  None, besides
4  Plaintiff's failure to comply with the USMS's request for medical information.

5

6  **SPECIAL INTERROGATORY NO. 8:**

7       IDENTIFY any and all of YOUR POLICIES and PROCEDURES
8  RELATING TO preventing discrimination based on disability from 2013-2016.

9  **RESPONSE TO SPECIAL INTERROGATORY NO. 8:**

10       Inter-Con objects to this Interrogatory on the grounds that it is vague and
11  ambiguous as to the meaning of "discrimination."

12       Inter-Con Security Systems, Inc.'s USMS Employee Handbook: section 5.1
13  Employment of the Disabled, 5.2 Equal Employment Opportunity, 7.0 Harassment
14  Prevention Policy, 7.7 Equal Opportunity Employment Policy; Equal Opportunity
15  Policy signed by Plaintiff on September 24, 2013; and the Collective Bargaining
16  Agreement between United States Court Security Offices (USCSO) and Inter-Con
17  Security Systems, Inc.: ARTICLE XII Equal Opportunity (Non-Discrimination).

18

19  **SPECIAL INTERROGATORY NO. 9:**

20       IDENTIFY any and all of YOUR POLICIES and PROCEDURES
21  RELATING TO accommodating the disability of YOUR employees.

22  **RESPONSE TO SPECIAL INTERROGATORY NO. 9:**

23       Inter-Con objects to this Interrogatory on the grounds that it is vague and
24  ambiguous as to the meaning of "accommodating the disability."

25       Subject to this objection, Inter-Con responds as follows:  Inter-Con Security
26  Systems, Inc.'s USMS Employee Handbook: sections 4.10 Reasonable
27  Accommodations and 7.7 Equal Opportunity Employment Policy.

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

CASE NO.: 3:19-CV-00025-DMS-BLM
DEFENDANT'S RESPONSES TO
SPECIAL INTERROGATORIES, SET 1

**SPECIAL INTERROGATORY NO. 10:**

IDENTIFY any and all of YOUR POLICIES and PROCEDURES RELATING TO preventing retaliation in YOUR workplace from 2012-2018.

**RESPONSE TO SPECIAL INTERROGATORY NO. 10:**

Inter-Con objects to this Interrogatory on the grounds that it is vague and ambiguous as to the meaning of "retaliation."

Subject to this objection, Inter-Con responds as follows:  Inter-Con Security Systems, Inc.'s USMS Employee Handbook: sections 2.3 Employee Complaints, 5.2 Equal Employment Opportunity, 7.0 Harassment Prevention Policy, 7.7 Equal Opportunity Employment Policy, and 7.16 Code of Business Ethics and Conduct.

**SPECIAL INTERROGATORY NO. 11:**

IDENTIFY any and all PERSONS with knowledge of Plaintiff's alleged medical condition during Plaintiff's employment with YOU.

**RESPONSE TO SPECIAL INTERROGATORY NO. 11:**

Inter-Con objects to this Interrogatory on the following grounds: (1) it calls for speculation as to the identities of "any and all PERSONS" with knowledge of Plaintiff's medical condition; (2) it is vague and ambiguous as to the meaning of "medical condition." Inter-Con will treat this as a request for the identity of all Inter-Con employees with knowledge of Plaintiff's history of sleep apnea.

Subject to these objections, Inter-Con responds as follows: The individuals currently known to Inter-Con are Dan Ryan, former Vice President for Operations; Bret Lockhart, former Contract Manager; and Melvin Roberts, former District Supervisor, Southern District of California, all physicians who have treated Plaintiff, employees of the USMS.

///

///

///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

CASE NO.: 3:19-CV-00025-DMS-BLM
DEFENDANT'S RESPONSES TO
SPECIAL INTERROGATORIES, SET 1

**SPECIAL INTERROGATORY NO. 12:**

IDENTIFY any and all COMMUNICATIONS between YOU and Plaintiff RELATING TO Plaintiff's alleged medical condition(s).

**RESPONSE TO SPECIAL INTERROGATORY NO. 12:**

Inter-Con objects to this Interrogatory on the following grounds: (1) it is vague and ambiguous as to the meaning of "medical condition." Inter-Con will treat this as a request for the identity of all communications between the parties pertaining to Plaintiff's history of sleep apnea; (2) it is overbroad as to time.

Subject to these objections, Inter-Con responds as follows: Facsimile Transmittal Sheet dated 2/23/2015, Facsimile Transmittal Sheet dated 12/1/2015, Plaintiff's medical file.

**SPECIAL INTERROGATORY NO. 13:**

IDENTIFY any and all COMMUNICATION(s) between YOU and Plaintiff in which Plaintiff requested he be accommodated for his perceived medical conditions(s).

**RESPONSE TO SPECIAL INTERROGATORY NO. 13:**

Inter-Con objects to this Interrogatory on the grounds that it is vague and ambiguous as to the meaning of "accommodated" and "perceived medical condition." Inter-Con will treat this as a request for the identity of all communications between the parties pertaining to Plaintiff's requests to be accommodated due to his history of sleep apnea.

Subject to these objections, Inter-Con responds as follows: Plaintiff did not request any accommodations pertaining to his history of sleep apnea.

**SPECIAL INTERROGATORY NO. 14:**

IDENTIFY any and all COMMUNICATION(s) RELATING TO Plaintiff's request for an extension of time to complete his sleep study in 2015.

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 8 -

CASE NO.: 3:19-CV-00025-DMS-BLM
DEFENDANT'S RESPONSES TO
SPECIAL INTERROGATORIES, SET 1

**RESPONSE TO SPECIAL INTERROGATORY NO. 14:**

Inter-Con objects to this Interrogatory on the grounds that it is overbroad as to the meaning of "RELATING TO."

Subject to this objection, Inter-Con responds as follows: Memorandum from Plaintiff Re: Denial of Request to Extend the Medical Review Due Date to June 29, 2015, Emails between Lisa Brown and Leah Sherman Re: Request for Extension, Emails between Lisa Brown and Melvin Roberts Re: Sugimoto owes me results 4/24/2015.

**SPECIAL INTERROGATORY NO. 15:**

IDENTIFY any and all accommodations YOU provided Plaintiff for Plaintiff's alleged medical conditions.

**RESPONSE TO SPECIAL INTERROGATORY NO. 15:**

Inter-Con objects to this Interrogatory on the grounds that it is vague and ambiguous as to the meaning of "accommodations" and "alleged medical condition." Inter-Con will treat this as a request for the identity of all accommodations Inter-Con provided Plaintiff due to his history of sleep apnea.

Subject to these objections, Inter-Con responds as follows: Plaintiff did not request any accommodations pertaining to his history of sleep apnea.

**SPECIAL INTERROGATORY NO. 16:**

IDENTIFY any and all PERSON(s) with knowledge about the facts and/or circumstances related to the allegations contained in Plaintiff's Complaint.

**RESPONSE TO SPECIAL INTERROGATORY NO. 16:**

Inter-Con objects to this Interrogatory on the grounds that it (1) is vague and ambiguous as to the meaning of "with knowledge" and "facts and/or circumstances," (2) it assumes that the allegations in Plaintiff's Complaint are true, which Inter-Con neither admits nor concedes, (3) it calls for speculation, (4) it is

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 9 -

CASE NO.: 3:19-CV-00025-DMS-BLM
DEFENDANT'S RESPONSES TO
SPECIAL INTERROGATORIES, SET 1

1  overbroad, not proportional to the needs of this case, and unduly burdensome, and

2  (5) it is harassing due to its overbreadth.

3       Subject to these objections, Inter-Con responds as follows: Dan Ryan, former

4  Vice President for Operations; Bret Lockhart, former Contract Manager; Melvin

5  Roberts, former District Supervisor, Southern District of California;  and Leah

6  Sherman, Contractor, Project Support Services at United States Marshals Service,

7  Plaintiff, Plaintiff's counsel, and the undersigned counsel of record.

8

9  **SPECIAL INTERROGATORY NO. 17:**

10       State the number of employees who were terminated by YOU from 2013

11  through 2015 who had a documented disability.

12  **RESPONSE TO SPECIAL INTERROGATORY NO. 17:**

13       Inter-Con objects to this Interrogatory on the grounds: (1) it is vague and

14  ambiguous as to the meaning of "documented disability" (2) it is overbroad, not

15  proportional to the needs of this case, and unduly burdensome (3) it is harassing

16  due to its overbreadth; and (4) it seeks a legal conclusion regarding the definition of

17  "disability."

18

19  **SPECIAL INTERROGATORY NO. 18:**

20       State the number of Court Security Officers who were terminated by YOU

21  from 2013 through 2015 who had a documented disability.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

CASE NO.: 3:19-CV-00025-DMS-BLM
DEFENDANT'S RESPONSES TO
SPECIAL INTERROGATORIES, SET 1

1   **RESPONSE TO SPECIAL INTERROGATORY NO. 18:**

2       Inter-Con objects to this Interrogatory on the grounds: (1) it is vague and

3   ambiguous as to the meaning of "documented disability" (2) it is overbroad, not

4   proportional to the needs of this case, and unduly burdensome (3) it is harassing

5   due to its overbreadth; and (4) it seeks a legal conclusion regarding the definition of

6   "disability."

7

8

9   Dated: June 14, 2019          Burke, Williams & Sorensen, LLP

10                      By: _____

11                        Cheryl Johnson-Hartwell

12                        Mitchell A. Wrosch
                      Lindsay M. Samuel

13                        Attorneys for Defendant,
                      INTER-CON SECURITY SYSTEMS,

14                        INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

CASE NO.: 3:19-CV-00025-DMS-BLM
DEFENDANT'S RESPONSES TO
SPECIAL INTERROGATORIES, SET 1

## VERIFICATION

I have read the foregoing DEFENDANT INTER-CON SECURITY SYSTEMS, INC.'S RESPONSES TO PLAINTIFF'S INTERROGATORIES, SET ONE.

I, Richard Stack, am the Chief Operating Officer at INTER-CON SECURITY SYSTEMS, INC., a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason. DEFENDANT INTER-CON SECURITY SYSTEMS, INC.'S RESPONSES TO SPECIAL INTERROGATORIES, SET ONE were prepared with the assistance of counsel for INTER-CON SECURITY SYSTEMS, INC., based on the information available to INTER-CON SECURITY SYSTEMS, INC., at the time of this verification, and I am relying upon the advice of counsel in making this verification. I am informed and believe, and on that ground allege, that the matters stated in the foregoing document are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 11, 2019 at Pasadena, California.


Richard Stack

## PROOF OF SERVICE

I, Olga Valadez, declare:

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 444 South Flower Street, Suite 2400, Los Angeles, California 90071-2953. On June 14, 2019, I served a copy of the within document(s):

**DEFENDANT, INTER-CON SECURITY SYSTEMS, INC.'S RESPONSES TO PLAINTIFF, GENE SUGIMOTO'S SPECIAL INTERROGATORIES, SET ONE**

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below.

☐    by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐    by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

| | |
|---|---|
| Aisling S. Gilliland, Esq.<br>The Gilliland Firm<br>402 West Broadway, Suite 1760<br>San Diego, CA 92101<br>Telephone: (619) 878-1580<br>Fax: (619) 878-6630<br>aisling@thegillilandfirm.com<br><br>Corey P. Hanrahan, Esq.<br>The Hanrahan Firm<br>402 West Broadway, Suite 1760<br>San Diego, CA 92101<br>Telephone: (619) 377-6522<br>Fax: (619) 377-6662<br>corey@hanrahanfirm.com | *Attorneys for Plaintiff*<br>*GENE SUGIMOTO* |

BURKE, WILLIAMS &
SORENSEN, LLP
ATTORNEYS AT LAW
CAMARILLO

IRV #4816-8523-6104 v1

1    I am readily familiar with the firm's practice of collection and processing correspondence

2    for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same

3    day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on

4    motion of the party served, service is presumed invalid if postal cancellation date or postage

5    meter date is more than one day after date of deposit for mailing in affidavit.

6    I declare that I am employed in the office of a member of the bar of this court at whose

7    direction the service was made.

8    Executed on June 14, 2019, at Los Angeles, California.

9

10   _____

11                          Olga Valadez

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 2

# In The Matter Of:

*GENE SUGIMOTO v.*
*INTER-CON SECURITY SYSTEMS, INC.*

*RICHARD T. STACK*
*August 29, 2019*

*SCHULER COURT REPORTING*

Min-U-Script® with Word Index

1    CSO, or is it a different position?

2        A    No, I was an armed security officer with

3    Inter-Con when I first started my employment.

4        Q    Okay.  Do you have a recollection or knowledge

5    of when it was that Mr. Sugimoto's employment was

6    terminated with Inter-Con?

7        A    It was early of 2015.

8        Q    Do you have a recollection of what the exact

9    date was?

10       A    Not the exact date.

11       Q    How about an estimate?

12       A    I believe it was April of 2015.

13       Q    And at that time you were the executive vice

14   president of operations, correct?

15       A    Yes.

16       Q    And as the executive vice president of

17   operations at that time, were you involved in the

18   decision to terminate Mr. Sugimoto's employment?

19       A    I was.

20       Q    In addition to you, tell me all of the other

21   people who were involved in the decision to terminate

22   Mr. Sugimoto's employment.

23       A    Natalie Griffiths, Inter-Con's associate

24   counsel.  Dan Ryan, Inter-Con's senior vice president of

25   operations.  Robert Posey, Inter-Con's 9th Circuit

1    manager.

2        Q    Anyone else?

3        A    Not that I can think of, no, sir.

4        Q    Of you and the three other people that you just

5    identified, who was the first person that broached the

6    idea of terminating Mr. Sugimoto's employment?

7        A    Daniel Ryan.

8        Q    And do you know who Daniel Ryan broached that

9    with?  Was it you?  Was it Ms. Griffiths?  Was it

10   Mr. Posey?

11       A    Natalie Griffiths.

12       Q    Were you there when that conversation took

13   place?

14       A    It was an email.

15       Q    And what did the email say?

16       A    The email which was ultimately forwarded to me

17   explained that Inter-Con had received a medical

18   disqualification notice from the United States Marshals

19   Service, and in accordance with the contract,

20   Mr. Sugimoto had to be removed from the contract.

21       Q    Did you review that email from Mr. Ryan to

22   Ms. Griffiths to prepare for your deposition today?

23       A    I did, because I was then a party to that email

24   from Ms. Griffiths.

25       Q    Right.  So you were party to the email back

1    that.  Are you guys claiming privilege over the

2    communications with Ms. Griffiths now?

3              MR. WROSCH:  Yeah.

4              MR. HANRAHAN:  Okay.

5    BY MR. HANRAHAN:

6         Q    Are you going to follow that instruction, sir?

7         A    I am.

8         Q    Other than Ms. Griffiths, upon receiving the

9    December 1st, 2014, request from U.S. Marshals Service

10   requesting medical information from Mr. Sugimoto, did

11   you make an effort to speak with anyone else to

12   determine whether or not the U.S. Marshals Service had

13   that right to request that medical information?

14        A    No.

15        Q    Did you make an effort to determine whether or

16   not you had the ability or Inter-Con had the ability to

17   inquire of the U.S. Marshals Service as to what

18   specifically caused them to request that additional

19   medical information?

20        A    No.

21        Q    Were you involved in the process, in December

22   of 2014, to provide the information that Mr. Sugimoto

23   provided to Inter-Con to the U.S. Marshals Service?

24        A    No.

25        Q    Do you know who was involved in that process?

1    frame is, I'm not party to -- they were unable, and the

2    way they mark it was medical determination is deferred.

3    Meaning they were unable to say approved or disapproved

4    pending further documentation.  And the further

5    documentation are the requests of information 1, 2 and

6    3, and everything included with them on the medical

7    review.

8           So at the time of December 1st he had not been

9    qualified or disqualified.  It was we need more

10   information to make that determination.

11      Q   During the period of June 2014 to December 2014

12   had anyone at the U.S. Marshals Service advised

13   Inter-Con that Mr. Sugimoto was not performing his

14   duties well?

15      A   No.

16      Q   Or drowsy at work?

17      A   No.

18      Q   Sleeping at work?

19      A   No.

20      Q   So then after providing the documentation in

21   response to the December 1st, 2014, request, you

22   indicated that the U.S. Marshals Service requested after

23   that, sometime in February 2015, that Mr. Sugimoto

24   undergo a sleep study, correct?

25      A   No.  I think I said they requested more

1      Q    Are you sure?

2      A    I believe.

3      Q    What is Inter-Con's policy on requesting

4   extensions of time from the U.S. Marshals Service for

5   employees to provide medical documentation that was

6   requested?

7      A    I believe our practice was if it was requested

8   within the first several days of being in receipt, then

9   Inter-Con would, in fact, request an extension.  If it

10  was requested within the last few days of being due,

11  then we would not, based off of our many conversations

12  with the Marshals Service.

13     Q    So at the time that Mr. Sugimoto received the

14  February 2015 request for additional medical

15  information, Inter-Con was aware that if a request for

16  an extension to provide it was made closer in time to

17  the due date, that the U.S. Marshals Service would deny

18  it, correct?

19     A    That is correct.

20          (Exhibit 4 was marked for identification

21          by the court reporter.)

22  BY MR. HANRAHAN:

23     Q    Let me show you Exhibit 4.  Have you seen this

24  email before, sir?

25     A    I have.

1        Q    Had you seen this email prior to Mr. Sugimoto's

2   termination?

3        A    I believe I did.

4        Q    And this email, the email on the top, is an

5   email from Ofelia Villarreal to Melvin Roberts on March

6   24th, 2015, correct?

7        A    Correct.

8        Q    And is it Mrs. Villarreal?  A female?  A male?

9        A    It's a female.

10       Q    Okay.

11       A    I'm not sure if she's married or not.

12       Q    So Ms. Villarreal writes, "I have forwarded to

13   Dan for approval since Bret is traveling.  I did advise

14   that this had been pending approval for two weeks now.

15   I'll advise if and once I get it back."  Do you see

16   that?

17       A    I do.

18       Q    So isn't it true that as of March 24th, 2015,

19   Mr. Sugimoto's request for pre-authorization of the

20   medical expenses related to the sleep study, or whatever

21   the medical information was that was being requested,

22   had been pending and unanswered for two weeks?

23       A    I think this is just shy of two weeks, by the

24   way.  This is 13 days.  But yes.

25       Q    How do you know it's 13 days?

1        A    Well, March 24th from March 11th, the

2    pre-authorization starting the request.

3        Q    Okay.  So in any event, this is longer than

4    nine days, correct?

5        A    I believe I said eight.  And it's longer.  I

6    might have been discussing business days or calendar

7    days.  But yes.

8        Q    Well, if we find ourselves in that position

9    later, and there is a distinction between calendar days

10   or business days, let me know.  Okay?

11       A    Will do.

12       Q    Okay.  Now, you indicated that you had seen

13   Exhibit 4 prior to Mr. Sugimoto's termination, correct?

14       A    Correct.

15       Q    And at that point, prior to making the decision

16   to terminate, knowing you had seen Exhibit 4, did you

17   contact Ms. Villarreal or Mr. Roberts to ask them what

18   the holdup was with the pre-authorization?

19       A    I did not.

20       Q    Why not?

21       A    Because I saw this in a longer string, which I

22   believe we produced for you, where the approval was

23   there.

24       Q    And do you know when it was finally approved?

25       A    I don't remember the exact date, no.  I would

1    have to see it.

2         Q    Prior to terminating Mr. Sugimoto's employment,

3    did you ask anyone at Inter-Con why it was that since

4    the approval was taking so long, that an extension was

5    not requested of the U.S. Marshals Service earlier on?

6         A    No.

7         Q    Looking back at it now, do you think it would

8    have made sense that given the pre-authorization was

9    pending for at least several weeks, that Inter-Con would

10   have reached out to the U.S. Marshals Service to request

11   an extension earlier on?

12        A    No.

13        Q    Did Mr. Sugimoto have the ability to reach out

14   directly to the U.S. Marshals Service to request an

15   extension?

16        A    He could contact them directly, as many

17   employees do, and he could have asked us.  I did not see

18   anything in his file where he requested Inter-Con, "May

19   I please have an extension," at the time this

20   pre-authorization was being reviewed.

21        Q    Do you know if anyone at Inter-Con advised

22   Mr. Sugimoto of how long it was going to take to obtain

23   authorization for the charges?

24        A    I don't know.

25        Q    Prior to terminating Mr. Sugimoto's employment,

 1   did you make any effort to determine whether or not

 2   anyone at Inter-Con had advised Mr. Sugimoto of the

 3   expected time frame on receiving authorization for the

 4   medical charges?

 5       A    I did not.

 6       Q    Do you know when the first time that it was

 7   that Inter-Con made a request of the U.S. Marshals

 8   Service to receive an extension for Mr. Sugimoto to turn

 9   in the medical information requested?

10       A    I do not.

11       Q    Did you ever make an effort to question Lisa

12   Brown with regard to when it was that Mr. Sugimoto's

13   extension was first requested?

14       A    I did not.

15       Q    I'll show you what I'll mark as Exhibit 5 to

16   your deposition.

17            (Exhibit 5 was marked for identification

18            by the court reporter.)

19   BY MR. HANRAHAN:

20       Q    Does Lisa Brown still work for Inter-Con?

21       A    She does not.

22       Q    Do you know when she left?

23       A    Sometime in late summer or fall of 2015.

24       Q    Was she terminated or did she resign?

25            MR. WROSCH:   Objection; beyond the scope of the

1    deposition notice.  Violates her privacy rights.

2           You can answer if you know personally.

3           THE WITNESS:  She resigned.

4    BY MR. HANRAHAN:

5       Q    Okay.  If you take a look at Exhibit 5 in front

6    of you, sir, this is an email, on the bottom, from Mel

7    Roberts to Lisa Brown on April 14th, 2015.  Do you see

8    that?

9       A    Yes.

10      Q    And Mr. Roberts writes to Ms. Brown "Also, any

11   word on Sugimoto's extension?"  Do you see that?

12      A    I do see it.

13      Q    Do you know if, prior to April 14th, 2015, that

14   anyone at Inter-Con had made a request to the U.S.

15   Marshals Service for an extension of time for

16   Mr. Sugimoto to provide his medical information?

17      A    I do not.

18      Q    You understand that Mr. Sugimoto was terminated

19   because he failed to get the medical information to

20   Inter-Con, to then provide to the U.S. Marshals Service,

21   by the deadline set by the U.S. Marshals Service,

22   correct?

23      A    I believe he was terminated because the

24   Marshals Service said he was no longer qualified under

25   the contract.

RICHARD T. STACK                                              50

1        Q    For not getting the medical documentation back

2   by the deadline set by them, correct?

3        A    Correct.

4        Q    But sitting here today, you have no idea when

5   it was that Inter-Con first made a request for an

6   extension for Mr. Sugimoto to provide that

7   documentation, correct?

8        A    I do not.

9        Q    Did you make any effort to determine when it

10  was that Inter-Con first made that request?

11       A    I have not.

12       Q    How are those requests made?  Are they phone

13  call?  Text message?  Email?

14       A    They're typically email.

15       Q    Who would have been the person at Inter-Con, in

16  April of 2015, that would have made that request?

17       A    Lisa Brown.

18       Q    Is there anyone else at that time that would

19  have been responsible for that, or was that solely Lisa

20  Brown's jurisdiction?

21       A    That was Lisa Brown.

22       Q    To prepare for your deposition today did you

23  make any effort to search Lisa Brown's email to

24  determine when it was, if ever, that she requested an

25  extension for Mr. Sugimoto?

1        A    No, I did not.

2        Q    Had you seen Exhibit 5 prior to terminating

3   Mr. Sugimoto's employment?

4        A    I don't recall.

5        Q    Prior to terminating Mr. Sugimoto's employment,

6   though, did you try to make an effort to determine what

7   efforts Inter-Con had undertaken to get an extension for

8   Mr. Sugimoto?

9        A    I did speak with Mr. Ryan about why the

10  information wasn't submitted in a timely fashion and why

11  we had gotten to this point.  Because it's very

12  expensive for Inter-Con to lose any employee on these

13  programs.  And I would not have a new employee cleared

14  for at least six months.  So we don't take it lightly

15  anytime we have to let somebody leave the program.

16       Q    And what did Mr. Ryan tell you?

17       A    He explained to me the first request was back

18  in December, the second request came back in February,

19  and that the information had not been provided.  And it

20  was approved for him to get the tests done, the medical

21  clearance.

22            He also explained to me that Mr. Sugimoto had

23  previously requested reimbursement for medical exams.

24  So he knew the process, and that had been done.  Because

25  I was asking also, "Is this the first time he's ever had

RICHARD T. STACK                                    53

1        Q    And if you look at this email from Lisa Brown

2    to Barbara Hayes and Lisa Sherman, with a copy to Lena

3    Horvat, Ms. Brown is requesting an extension for

4    Mr. Sugimoto to turn in his medical information,

5    correct?

6        A    That is correct.

7        Q    And this request, on Exhibit 6, is made one day

8    after Mr. Roberts emailed her on April 14th and asked

9    for, quote-unquote, "any word on Sugimoto's extension?"

10   Do you see that?

11       A    I did.

12       Q    Does this appear to you that Mr. Roberts was

13   under the impression on April 14th, 2015, that the

14   extension request had already been made, when, in fact,

15   Lisa Brown made it for the first time the following day,

16   on April 15?

17            MR. WROSCH:  Objection; calls for speculation.

18            THE WITNESS:  I have no idea what Mr. Roberts

19   was thinking.

20   BY MR. HANRAHAN:

21       Q    Did you ever ask him?

22       A    No.

23       Q    Did you ever meet with Mr. Roberts and ask him

24   why it was he was asking about Mr. Sugimoto's extension

25   on April 14th?

1        A    No.

2        Q    Did you ever meet with Lisa Brown and ask her

3   if the first time she requested an extension for

4   Mr. Sugimoto was April 15th, 2015?

5        A    I did not.

6        Q    Did you know what time the medical records were

7   requested to be submitted by the U.S. Marshals Service?

8        A    If I saw a date for that, if I had the Medical

9   Review Form, I could tell you the exact date it was due.

10       Q    It was sometime end of April 2015, correct?

11       A    I believe, but I'd have to see the exact date.

12       Q    Do you know when it was that Mr. Sugimoto first

13   made a request to Inter-Con for an extension to provide

14   his medical information?

15       A    I do not.

16       Q    Did you ever ask him when it was that he first

17   made a request for an extension from Inter-Con in order

18   to provide his medical information to Inter-Con to

19   provide to the U.S. Marshals Service?

20       A    I did not.

21       Q    Was it important for you, before terminating

22   Mr. Sugimoto's employment for not providing the

23   documentation to Inter-Con to provide to the U.S.

24   Marshals Service, to determine why it was that the

25   documentation had not been submitted by the deadline?

1      Q    And it looks like on April 27, 2015, Lea

2  Sherman sent an email to Lisa Brown, Lena Horvat, Dan

3  Ryan, Bret Lockhart, copying Barbara Hayes, indicating

4  that Mr. Sugimoto is "non-compliant with providing

5  medical information in order for FOH to make a

6  determination."  And then in parentheticals, "(Requested

7  on 2/19/15 with a due date of 4/19/15.)"  Do you see

8  that?

9      A    Yes, sir.

10     Q    Does that refresh your recollection that

11  Mr. Sugimoto was expected to turn in the medical

12  documentation by April 19th, 2015?

13     A    By reviewing this, I believe that would be

14  correct, yes.

15     Q    And that was more than a month after the

16  extension was requested for Mr. Sugimoto by Mr. Roberts,

17  correct?

18     A    That is correct.

19     Q    Do you know what the time frame was that the

20  U.S. Marshals Service said if the extension is requested

21  toward the beginning of the request, that we'll grant

22  it, but if it's later in the game, so to speak, we

23  won't?

24     A    They typically expected it to be done within

25  seven days.

RICHARD T. STACK                                    67

1        Q    Okay.  So had Mr. Sugimoto went ahead and

2    incurred the expenses for the sleep study without

3    seeking pre-authorization, he would have been running

4    the risk that he would have to bear those costs out of

5    pocket, correct?

6        A    That could be a risk, yes.

7        Q    In fact, that's what the pre-authorization form

8    says, correct?

9        A    That is correct.  However, I can tell you he

10   would have been forced to pay for it, there would have

11   been a grievance, and I would have been paying to settle

12   the grievance.  But yes, I understand your question.

13       Q    Okay.  Did anyone, in February, March or April

14   of 2015, advise Mr. Sugimoto that he could forego the

15   pre-authorization, do the doctor's appointment, and that

16   Inter-Con would reimburse him for the cost?

17       A    Not that I'm aware of.

18       Q    And so based on the letter from the U.S.

19   Marshals Service that indicated that Mr. Sugimoto's

20   documentation was due on April 19th, and Ms. Brown's

21   request for an extension of time on April 15th, it looks

22   like she made the request four days before the due date.

23       A    Correct.

24       Q    Do you know whether or not Ms. Brown's request

25   for an extension for Mr. Sugimoto was granted or denied?

RICHARD T. STACK                                           75

1    qualified to perform under the contract?  Have you ever

2    challenged that?

3              MR. WROSCH:  Objection; outside the scope of

4    the deposition.

5              You can answer with personal knowledge, if you

6    know.

7              THE WITNESS:  I know that we have challenged

8    terminations or demotions or removals.  What the exact

9    requirements or the circumstances were, I cannot recall.

10   We haven't been performing this contract for some time

11   now, and I didn't prepare for that when I came in today.

12   BY MR. HANRAHAN:

13      Q    But as you sit here today, do you have a

14   recollection that there was a time that Inter-Con

15   opposed or challenged the U.S. Marshals Service's

16   instruction to terminate an employee, for which

17   Inter-Con was successful in saving the employee's job?

18             MR. WROSCH:  Same objections.

19             THE WITNESS:  I can't recall if they were

20   successful or not.  But I do recall that we have gone

21   back to the Marshals Service, I don't know if it was for

22   a medical disqualification or a performance standard

23   disqualification or what it may be, but I just didn't

24   review that prior to coming in.

25   BY MR. HANRAHAN:

RICHARD T. STACK                                            78

1    through a subcontractor, did Inter-Con not employ any of

2    those employees?

3        A    At that time, and up until probably two, three

4    weeks ago, I believe that to be correct, yes.

5        Q    Were there any positions available with

6    Inter-Con anywhere in Southern California?

7        A    Could you define what you consider Southern

8    California?

9        Q    Los Angeles down to San Diego.

10       A    Yeah, Los Angeles, but I wouldn't consider that

11   to be within the same work area.  There were Los Angeles

12   positions, but I don't think it's reasonable to think

13   somebody would drive from San Diego to Los Angeles every

14   day for work.

15       Q    Did anybody at Inter-Con, in April of 2015,

16   though, ask Mr. Sugimoto whether or not he would like a

17   job with Inter-Con that was located in Los Angeles?

18       A    I don't know that they did, no.

19       Q    Are there any locations that Inter-Con provides

20   services between Los Angeles and San Diego, like

21   Santa Ana, Irvine, Anaheim?

22       A    There are some, yes.

23       Q    What would those locations be?  And I'm talking

24   now about the April of 2015 time frame.

25       A    I can't recall them all off the top of my head.

1    Again, I didn't see that as a notice where it said know

2    all the other work locations.  But we did sporadic work

3    for Southern California Edison, where a post would be

4    open for four, five hours and then closed, to watch a

5    generator.  There may have been a DMV, an unemployment

6    office, but I don't recall them all off the top of my

7    head.

8         Q    In April of 2015, though, when it was decided

9    that Mr. Sugimoto's employment would be terminated

10   because the U.S. Marshals Service found him not

11   qualified to perform under the contract, did you make an

12   effort to look at the other locations in Southern

13   California, Los Angeles down to San Diego, for which

14   Mr. Sugimoto may have been qualified to perform?

15        A    Not from Los Angeles, no.

16        Q    What area did you look specifically?

17        A    It was San Diego, as I previously testified.

18        Q    What would be the geographical parameter of

19   what you considered San Diego, for which you were

20   exploring?

21        A    I would say anything from San Onofre down to

22   the border of Mexico and California.

23        Q    And there were no openings anywhere in that

24   area?

25        A    Not that I recall, no.

RICHARD T. STACK                                          80

1        Q    And no effort to ask Mr. Sugimoto if he would

2    be willing to work outside of that area, correct?

3              MR. WROSCH:   Asked and answered.

4              THE WITNESS:   Not that I'm aware of.

5    BY MR. HANRAHAN:

6        Q    Was there anything about the U.S. Marshals

7    Service's opinion that Mr. Sugimoto was not qualified to

8    perform under their contract that would have prevented

9    him from continuing to work for Inter-Con in a different

10   capacity under a different contract?

11       A    Not if he met the qualifications of that

12   specific contract, no.

13       Q    Do you know if anybody from Inter-Con met with

14   Mr. Sugimoto on April 27th, 2015, or thereafter, to go

15   over open positions with him?

16       A    I'm not aware.

17       Q    At some point after Mr. Sugimoto's termination,

18   were there any discussions at Inter-Con about how the

19   company should handle requesting from the U.S. Marshals

20   Service extensions for employees to submit medical

21   information?

22             MR. WROSCH:   Objection; outside the scope of

23   the notice.

24             You can answer from personal knowledge, if you

25   know.

1          I, the undersigned, a Certified Shorthand

2  Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4  before me at the time and place herein set forth; that

5  any witnesses in the foregoing proceedings, prior to

6  testifying, were duly sworn; that a record of the

7  proceedings was made by me using machine shorthand,

8  which was thereafter transcribed under my direction;

9  that the foregoing transcript is a true record of the

10  testimony given.

11          Further, that if the foregoing pertains to the

12  original transcript of a deposition in a federal case,

13  before completion of the proceedings, review of the

14  transcript [X] was [ ] was not requested.

15          I further certify I am neither financially

16  interested in the action nor a relative or employee of

17  any attorney or party to this action.

18

19          IN WITNESS WHEREOF, I have this date subscribed

20  my name.

21

    Dated: September 13, 2019

22

23          *Susan H. Caiopoulos*

24          SUSAN H. CAIOPOULOS
            CSR No. 8122

25

SCHULER COURT REPORTING
858.518.1619

EXHIBIT 3

**Sharp Rees Stealy - San Diego Main**
**2929 Health Center Drive**
**San Diego CA 92123**

iLetter

SHARP Rees-Stealy
Medical Group

SUGIMOTO, GENE
MRN: 1800773

Stephen H. Lee, M.D.
*Pulmonary & Critical Care*

May 8, 2009

To: Judicial Security Division
Re: Gene Sugimoto, DOB 6/14/48

2929 Health Center Drive, San Diego, CA 92123
(858) 939-6570     FAX (858) 874-2395

I saw Mr. Sugimoto in my clinic 5/8/09 for evaluation of obstructive sleep apnea (OSA) as part of a pre-employment examination. He has a history of OSA that was diagnosed over 10 years ago at an outside facility. I do not have details of this study. At that time, he had problems with occasional excessive and bothersome daytime sleepiness. By his report, he was started on CPAP therapy, but only used it for about two weeks as he could not tolerate it at all. He was then evaluated by an ENT physician, but surgical treatment was not offered.

He subsequently made some lifestyle changes and lost about 20 pounds. Since then, he states that he has not had any problems with bothersome excessive daytime sleepiness. He feels refreshed upon awakening from sleep in the morning. He is alert during the day. The Epworth Sleep Scale score today was 1.

He denies any problems with concentrating or focusing on tasks. No mood disorders or memory problems were reported.

In summary, based on the above, I do not think a repeat sleep study is indicated at this time.

If you have any questions or concerns, I can be reached at my office, 858-939-6570.

Stephen H. Lee, MD
Pulmonary and Critical Care Medicine
Sharp Rees-Stealy Medical Group

Electronically signed by:STEPHEN H LEE M.D. May 8 2009 4:49PM PST Author

**This document is privileged and confidential, and is intended for those individuals personally involved in the care of individual patients who may be identifiable from this information. All other use or disclosure is strictly prohibited unless specifically and legally authorized.**

Printed: 05/08/2009 4:49PM          **Printed from Touchworks**                    1 of 1

EXHIBIT 4

MAR 1 4 2014



**U.S. Department of Justice**

United States Marshals Service

*Judicial Security Division*

_____

*Alexandria, Virginia 22301-1025*

Mr. Jerry Neville
Inter-Con Security Systems, Inc.
1631 Prince Street
Alexandria, VA 22314

Dear Mr. Neville,

    This is an official notification that this office has completed the medical evaluation process for each applicant for whom a "Medically Qualified" Medical Review Form is attached. Based upon a review of the information received, the applicants have successfully met the medical standards of the United States Marshals Service's CSO contract. Therefore, each applicant is medically approved for performance as a CSO.

    In accordance with provisions of the contract, this approval will remain in effect for a period of one year, starting from the applicant's last examination date.

    If you have any questions or concerns regarding this matter, please contact Assistant Chief Marti A. Stanley, Office of Court Security, at (202) 307-9416.


                            Sincerely,



                            Daniel S. Hall
                            Chief
                            Office of Court Security


Enclosures

EXHIBIT 5

# Judicial Security Division
## Medical Review Form

14731

| | | | |
|---|---|---|---|
| LE Incumbent Name: | **Gene Sugimoto** | Date of Birth: | Age: **62** | Gender: **M** |

SSN: **XXX-X6-4799**

Examining Facility:   ,   ,
Circuit 9 9CA

| | | |
|---|---|---|
| Report of Medical Examination: | **Date: 3/20/2010** | This review is based on | **FY: 2010** |
| Supplemental Medical Information: **Date:** | | Supplemental Medical Received | **Date:** |

LE Incumbent   **Court Security Officer**

---

## YOUR STATUS IS:  Medically qualified

*Incumbent has no medical conditions that are likely to hinder safe and efficient performance of essential job functions.*

Review Date:  **08/25/2010**
Judicial Security Division Reviewing Physician:

**F. Rosenberg, DO, MPH**

---

Merits Record ID: **2401560**

EXHIBIT 6

# Judicial Security Division
## Medical Review Form

*AKAL*                                                    *14731*

| | | | |
|---|---|---|---|
| LE Incumbent Name: | **Gene Sugimoto** | Date of Birth: | Age: **63** | Gender: **M** |

SSN: **XXX-X6-4799**   **LE Incumbent**  **Court Security Officer**

Examining Facility:  ,  ,

**Circuit 9**   *SICA*

Report of Medical Examination:   **Date: 4/29/2011**   This review is based on   **FY: 2011**
Supplemental Medical Information: **Date:**   Supplemental Medical Received   **Date:**

---

## YOUR STATUS IS:  Medically qualified

*Incumbent has no medical conditions that are likely to hinder safe and efficient performance of essential job functions.*

Review Date:  **06/18/2011**
Judicial Security Division Reviewing Medical Officer:

*Leslie Hutchinson, M.D.*

**L. Hutchinson, MD, MPH**

EXHIBIT 7

ICSS

# Judicial Security Division
## Medical Review Form

| | | | |
|---|---|---|---|
| LE Incumbent Name: | **Gene Sugimoto** | Date of Birth: | Age: **65** | Gender: **M** |
| SSN: | **XXX-X6-4799** | **LE Incumbent  Court Security Officer** | |
| Examining Facility:  ,   , | | | |
| **Circuit 9** | | | |

| | | | |
|---|---|---|---|
| Report of Medical Examination: | **Date: 6/26/2013** | This review is based on | **FY: 2013** |
| Supplemental Medical Information: | **Date: 11/21/2013** | Supplemental Medical Received | **Date: 01/17/2014** |

## YOUR STATUS IS:  Medically qualified

*Incumbent has no medical conditions that are likely to hinder safe and efficient performance of essential job functions.*

Review Date: **02/26/2014**
Judicial Security Division Reviewing Medical Officer:

H. Goldhagen, MD, MPH

---

Merits Record ID: **2584017**

Page 1 of 1

EXHIBIT 8



**IC** **INTER-CON**

*Security Systems, Inc.*

*1631 Prince Street*
*Alexandria, Virginia 22314*

## FACSIMILE TRANSMITTAL SHEET

| | | | |
|---|---|---|---|
| **TO:** | *Melvin Roberts, District Supervisor* | **FROM:** | *Lisa V. Brown* |
| **COMPANY:** | *Inter-Con Security Systems, Inc.* | **DATE:** | *12/1/2014* |
| **FAX:** | | **PAGE#:** | *1* |
| **PHONE:** | | **PHONE:** | *571-384-7022* |
| **RE:** | *Incumbent: Gene Sugimoto* | **FAX:** | *571-384-7021* |

☐ Urgent   ☐ For review   ☐ Please comment   ☐ Please reply   ☐ Please recycle

**NOTES/COMMENTS:**

Enclosed you will find the Medical Review received from the USMS Judicial Security Division, Judicial Protective Services Branch and cover letter. Inter-Con has been instructed to direct the CSO Incumbent/Applicant to respond to the recommendations listed on the enclosed forms. Please ensure that all responses are returned to Inter-Con Security Systems, Inc., co Lisa V. Brown. Failure to respond in a timely manner may result in involuntary removal or disqualification from the CSO Program.

Please provide the above-cited Incumbent with his/her copy of this fax memo along with the applicable USMS Medical Review Form in a sealed envelope. THE INCUMBENT/CSO APPLICANT MUST SIGN THIS DOCUMENT BELOW. Please fax a copy of this signed acknowledgement to Inter-Con Security Systems, Inc., Attn: Lisa V. Brown – ASAP.

NOTE: INSTRUCT THE INCUMBENT TO RESPOND TO LISA V. BROWN ONLY. CONTACT WITH THE UNITED STATES MARSHALS SERICE FOR THIS INQUIRY IS PROHIBITED.

| | | |
|---|---|---|
| Incumbent/Applicant Signature | DS/LCSO Signature | *12-2-2014* |
| | | Date |

The follow-up requirements need to be completed and information mailed to Inter-Con Security Systems, Inc. Attn: Lisa V. Brown no later than **December 31, 2014** so we can ensure FOH (Federal Occupational Health) receives it by **January 30, 2015.**

If you have any questions or trouble reading this fax, please let me know.

Thank you,

Lisa V. Brown

**Contract Deliverable Specialist**

THIS COMMUNICATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED OR CONFIDENTIAL, THE DISCLOSURE OF WHICH IS PROHIBITED BY LAW. IF THE READER OF THIS COMMUNICATION (INCLUDING ANY ATTACHED DOCUMENTATION) IS NO THE INTEDED RFEIPIENT OR THE EMPLOYEE/AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECEIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STICKLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY BY TELEPHONE (COLLECT) AND RETURN THE ORIGINAL MESSAGE TO THE SENDER AT THE ABOVE ADDRESS VIA U.S. POTAL SERVICE. WE WILL REIMBURSE YOU FOR ALL REASONABLE EXPENSES INCURRED IN RETURNING THIS COMMUNICATION. THANK YOU

*210 South De Lacey Ave, Suite 200*                    *Phone: (626) 535-2200*
*Pasadena, CA 91105*

Date: 12/1/2014

Subject:  MRF Deadline

Dear CSO:  Gene Sugimoto

We have received notification from Federal Occupational Health (FOH) regarding your
recent contract mandatory annual health screening.  The results of the screening indicate
the need for additional follow-up medical testing or information which must be provided
by you to FOH if you wish to remain on the United States Marshals Service contract as a
Court Security Officer.

Failure to provide this information to FOH by the date listed below will cause Inter-Con
Security Systems, Inc. to take administrative actions which could include your permanent
removal from the aforementioned contract.

*Please contact your medical provider to address the required follow-up testing or*
*provide the information necessary to satisfy the FOH inquiry no later than:*

Date of Required Action: **January 30, 2015.**

Daniel Ryan
Vice President for Operations
Inter-Con Security Systems, Inc.



# Judicial Security Division
## Medical Review Form

| | | | |
|---|---|---|---|
| LE Incumbent Name: | **Gene Sugimoto** | Date of Birth: | Age: **66** | Gender: **M** |
| SSN: | **XXX-X6-4799** | **LE Incumbent  Court Security Officer** | | |

~~mining Facility:  ,  ,~~
~~uit 9~~

| | | | |
|---|---|---|---|
| Report of Medical Examination: | **Date: 6/20/2014** | This review is based on | **FY: 2014** |
| Supplemental Medical Information: | **Date:** | Supplemental Medical Received | **Date:** |

---

## YOUR STATUS IS:  Medical determination deferred pending further documentation

*Incumbent has medical findings which may hinder safe and efficient performance of essential job functions.  Please provide the following detailed or diagnostic medical information.  Per agency request, if further information is not provided, a determination will be made based on available medical information.  Send medical information to your employer.*

*The written request below should be provided to the treating physician, or other applicable health care provider(s), such as an audiologist.   Failure to provide the requested information or the failure to demonstrate that the medical condition(s) in question has been satisfactorily treated/resolved could result in medical disqualification.  Individuals who are medically disqualified are not allowed by the Marshals Service to serve as Court Security Officers.  In addition to the medical information requested below, the CSO applicant or incumbent and/or the treating physician should be encouraged to provide any additional written opinions or comments and any other copied records that may be useful in reaching a determination of medical qualification.*

1.   Your lab results evidenced an elevated blood sugar of 131.  Have your doctor provide a copy of a repeat fasting blood sugar (by venipuncture, not fingerstick) and a hemoglobin A1C and report the medical significance of the results, including any diagnosis and treatment.

2    Your recent lab results indicate a possible liver function abnormality (elevated AST and ALT).  Have your physician ⸱   ⸱a copy of repeat liver function testing and report on the etiology and medical significance of the findings.

3.   The examinee has a history of obstructive sleep apnea (OSA). No prior studies have been provided for review. Sleep apnea is a significant medical condition since it may lead to daytime drowsiness, thereby reducing attention, concentration, and ability to respond quickly in critical situations. Have the evaluating/treating physician provide a report concerning this condition that includes:

a)  diagnosis, with initial AHI and severity (include copies of the initial Sleep Study report and any subsequent studies, such as Split Night, CPAP Titration, or repeat PSG following surgical or other treatment to demonstrate resolution);
b)  recommended treatment (night-time devices, surgery, medications, etc.);
c)  whether the examinee has been compliant with recommended treatment over the past year;
d)  a copy of the initial and most recent 3 clinic notes related to the evaluation/maintenance of this condition; and
e)  the most recent 3-6 month downloaded CPAP compliance data (if CPAP has been recommended) or repeat PSG to demonstrate resolution of this condition.

Review Date:  ~~11/18/2014~~
Judicial Security Division Reviewing Medical Officer:

H. Goldhagen, MD, MPH

---

Merits Record ID: **2641888**

 INTER-CON *Security Systems, Inc.*

*1631 Prince Street*
*Alexandria, Virginia 22314*
*571-384-7022 PH*
*571-384-7021 FAX*

**To:**   **Melvin Roberts, District Supervisor**

**From:**  **Lisa V. Brown, Contract Deliverable Specialist**

**Date:**  **December 1, 2014**

**RE:**   **Incumbent: Gene Sugimoto**
         **9th –Southern District of California**

Enclosed is a confidential Medical Review Form (MRF) from the USMS Judicial Security Division concerning the medical status for the above named CSO Incumbent. Please provide the envelope to the referenced CSO/CSO Applicant and have him/her review the contents of the request carefully.

*It is crucial that the CSO Incumbent submit the requested information; the information must be received in the Virginia Office on or before  December 31, 2014. Failure to do will result in Inter-Con Security Systems, Inc issuance of a 10-Day Notice to the CSO for Failure to Comply.*

We have included instruction for the Incumbent/Applicant to return the MRF and the requested documents to you in a confidential sealed envelope, with recommendation they keep a copy of their medical records for themselves. You are prohibited from opening a sealed package or otherwise reviewing the medical information. Upon receipt of the sealed envelope, immediately have the Incumbent/Applicant sign the enclosed fax cover sheet, confirming receipt of the envelope from the USMS Judicial Security Division. Immediately FAX a copy of the cover sheet to the Virginia Office of Inter-Con Security Systems, Inc. after this information is delivered to the CSO Incumbent/Applicant so that it can be placed in the CSOs file folder. Please note failure to answer the enclosed MRF in timely manner could result in a voluntary resignation.

The CSO Incumbent/Applicant must take the enclosed USMS Medical Review Form to the physician and ensure that he/she reviews it before performing the required follow-up exam/test. This is necessary to ensure that the physician performs <u>ONLY</u> the required medical assessments as outlined by the USMS. If the physician feels that additional testing, not expressly referenced by the USMS, is required, the CSO Incumbent/Applicant must contact the undersigned before any such additional work is performed so that Inter-Con Security Systems, Inc. can verify with USMS whether such testing is required. If the CSO Incumbent/Applicant has additional testing performed without prior approval, the CSO Incumbent/Applicant will be responsible for the cost of any non-approved testing. CSO Incumbents/Applicants will not be reimbursed for cost associated with medical follow-ups.

**NOTE:  INSTRUCT THE INCUMBENT TO REPOND TO LISA V. BROWN IN THE VIRGINIA OFFICE ONLY. CONTACT WITH THE UNITED STATES MARSHALS SERVICE FOR THIS INQUIRY IS PROHIBITED.**

Thank you,

Lisa V. Brown
Contract Deliverable Specialist

`

EXHIBIT 9

Good Day Dr. Spees,

Attached to this note is a "Medical Review Form" sent to me by the U.S. Marshals Service, Judicial "Security Division, Medical Officer. They again want me to see you for further re-examination.

Items #1 and #2 are pretty much the same as they were the last time we went through this. Please tell me how you want to proceed, shall we do another lab test and office visit or will my last lab and office visit suffice?

Item #3 (a through e) is a bit more complicated. I was honest enough to indicate that in the past I was previously diagnosed with Sleep Apnea (15 years ago), and now they raise the matter. Attached is a report from Dr. Stephen Lee back in May 2009 whom I saw as a part of my pre-employment package and, he addressed my condition, will I need to see him again? Is Dr. Lee still with Sharp?

**Lastly, my employer (Inter-con Security) wants me to complete all of this and have the documents on their desk in Virginia by December 31st. I think this may not be adequate time to complete all of the exams and paperwork consequently; I may need a letter from you requesting additional time. Do you agree?**

**Please contact me on my cell phone 858-218-5228 or email at gysugi@sbcglobal.net. My Sharp.com is no longer available and I did not opt to sign up in the "My Health" system.**

*Dropped of this note w/ usms for & Dr Lee's letter at Vin Tazon wed. 12/03/2014*

EXHIBIT 10

**SHARP.** Rees-Stealy
Medical Group

From The Desk Of:

David N. Spees, M.D.
Family Medicine
16950 Via Tazon
San Diego, CA 92127
(858) 499-2705

12/8/14

Re: Gene Sugimoto
180 07 73

Update to letter by Dr.
Stephen Lee dated 5/8/2009.
At that time he weighed
242 lbs. Currently weighs
225 lbs. This would make
sleep apnea even less likely.
Currently without any other
symptoms / history / signs other
than snoring of sleep apnea.
Sleep study not indicated.

Sincerely,

David Spees MD

# SHARP. Rees-Stealy Medical Group

## iLetter

**Name:** SUGIMOTO, GENE
**MRN#:** 1800773

**DOB:** 06/14/1948
**Gender:** M

**Note Owner:** STEPHEN H. LEE M.D.
**Specialty:** Pulmonary Medicine
**Date of Encounter:** 05/08/2009

May 8, 2009

To: Judicial Security Division
Re: Gene Sugimoto, DOB 6/14/48

I saw Mr. Sugimoto in my clinic 5/8/09 for evaluation of obstructive sleep apnea (OSA) as part of a pre-employment examination. He has a history of OSA that was diagnosed over 10 years ago at an outside facility. I do not have details of this study. At that time, he had problems with occasional excessive and bothersome daytime sleepiness. By his report, he was started on CPAP therapy, but only used it for about two weeks as he could not tolerate it at all. He was then evaluated by an ENT physician, but surgical treatment was not offered.

He subsequently made some lifestyle changes and lost about 20 pounds. Since then, he states that he has not had any problems with bothersome excessive daytime sleepiness. He feels refreshed upon awakening from sleep in the morning. He is alert during the day. The Epworth Sleep Scale score today was 1.

He denies any problems with concentrating or focusing on tasks. No mood disorders or memory problems were reported.

In summary, based on the above, I do not think a repeat sleep study is indicated at this time.

If you have any questions or concerns, I can be reached at my office, 858-939-6570.

Stephen H. Lee, MD
Pulmonary and Critical Care Medicine
Sharp Rees-Stealy Medical Group

Electronically signed by:STEPHEN H LEE M.D.  May  8 2009  4:49PM PST Author

**This document is privileged and confidential, and is intended for those individuals personally involved in the care of individual patients who may be identifiable from this information. All other use or disclosure is strictly prohibited unless specifically and legally authorized.**

EXHIBIT 11

## Medical Review Form

| | | | | |
|---|---|---|---|---|
| LE Incumbent Name: | **Gene Sugimoto** | Date of Birth: | Age: **66** | Gender: **M** |
| SSN: | **XXX-X6-4799** | **LE Incumbent** | **Court Security Officer** | |

Examining Facility:  ,  ,
    uit 9

Report of Medical Examination:   **Date: 6/20/2014**      This review is based on      **FY: 2014**
Supplemental Medical Information: **Date: 12/9/2014**      Supplemental Medical Received   **Date: 12/22/2014**

---

## YOUR STATUS IS:  Medical determination deferred pending further documentation

*Incumbent has medical findings which may hinder safe and efficient performance of essential job functions. Please provide the following detailed or diagnostic medical information. Per agency request, if further information is not provided, a determination will be made based on available medical information. Send medical information to your employer.*

*The written request below should be provided to the treating physician, or other applicable health care provider(s), such as an audiologist. Failure to provide the requested information or the failure to demonstrate that the medical condition(s) in question has been satisfactorily treated/resolved could result in medical disqualification. Individuals who are medically disqualified are not allowed by the Marshals Service to serve as Court Security Officers. In addition to the medical information requested below, the CSO applicant or incumbent and/or the treating physician should be encouraged to provide any additional written opinions or comments and any other copied records that may be useful in reaching a determination of medical qualification.*

I.   **All medical reports regarding the elevated fasting glucose and liver enzymes are acceptable. However, the following previously requested item has not yet been received or requires additional documentation:**

2.   **The examinee has a history of obstructive sleep apnea. Thank you for providing additional information regarding this condition. Dr. Lee reports evaluation of OSA in 2009 (initial sleep study not available for review, no initial AHI         ded)and a recommendation for CPAP. The examinee was unable to tolerate CPAP after about 2 weeks of therapy. He has since lost 20 lbs and believes that the OSA has resolved. However, sleep apnea is a significant medical condition since it may lead to daytime drowsiness, thereby reducing attention, concentration, and ability to respond quickly in critical situations. Therefore, objective evidence of resolution of this condition is required prior to medical clearance. Please provide a copy of a repeat, current, sleep study demonstrating resolution of this condition.**

Review Date:  **01/30/2015**

Judicial Security Division Reviewing Medical Officer:

I. Goldhagen, MD, MPH

*This document is dated 1/30 2015 however I.C never acted m.T till 2/23/2015*

*Dr. Goldberg in a previous year cleared me after reviewing phys exam (for FY 2013)*

EXHIBIT 12



**INTER-CON**
*Security Systems, Inc.*

*1631 Prince Street*
*Alexandria, Virginia 22314*

## FACSIMILE TRANSMITTAL SHEET

**TO:**  *Melvin Roberts, District Supervisor*  |  **FROM:**  Lisa V. Brown

**COMPANY:**  *Inter-Con Security Systems, Inc.*  |  **DATE:**  2/23/2015

**FAX:**  |  **PAGE#:**  *1*

**PHONE:**  |  **PHONE:**  *571-384-7022*

**RE:**  *Incumbent: Gene Sugimoto*  |  **FAX:**  *571-384-7021*

☐ Urgent  ☐ For review  ☐ Please comment  ☐ Please reply  ☐ Please recycle

**NOTES/COMMENTS:**

Enclosed you will find the Medical Review received from the USMS Judicial Security Division, Judicial Protective Services Branch and cover letter. Inter-Con has been instructed to direct the CSO Incumbent/Applicant to respond to the recommendations listed on the enclosed forms. Please ensure that all responses are returned to Inter-Con Security Systems, Inc., co Lisa V. Brown. Failure to respond in a timely manner may result in involuntary removal or disqualification from the CSO Program.

Please provide the above-cited Incumbent with his/her copy of this fax memo along with the applicable USMS Medical Review Form in a sealed envelope. THE INCUMBENT/CSO APPLICANT MUST SIGN THIS DOCUMENT BELOW. Please fax a copy of this signed acknowledgement to Inter-Con Security Systems, Inc., Attn: Lisa V. Brown – ASAP.

**NOTE:  INSTRUCT THE INCUMBENT TO RESPOND TO LISA V. BROWN ONLY.  CONTACT WITH THE UNITED STATES MARSHALS SERICE FOR THIS INQUIRY IS PROHIBITED.**

_____  |  _____  |  _____
Incumbent/Applicant Signature  |  DS/LCSO Signature  |  Date

The follow-up requirements need to be completed and information mailed to Inter-Con Security Systems, Inc. Attn: Lisa V. Brown no later than **March 25, 2015** so we can ensure FOH (Federal Occupational Health) receives it by **April 24, 2015.**

If you have any questions or trouble reading this fax, please let me know.

Thank you,

Lisa V. Brown

**Contract Deliverable Specialist**

THIS COMMUNICATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED OR CONFIDENTIAL. THE DISCLOSURE OF WHICH IS GOVERNED BY LAW. IF THE READER OF THIS COMMUNICATION, INCLUDING ANY ATTACHED DOCUMENTS, IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE/AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO THE SENDER AT THE ABOVE ADDRESS VIA THE POSTAL SERVICE. WE WILL REIMBURSE YOU FOR ALL REASONABLE EXPENSES INCURRED IN RETURNING THIS COMMUNICATION. THANK YOU.

**IC SECURITY SYSTEMS, INC.**
*210 South De Lacey Ave, Suite 200*                      *Phone:  (626) 535-2200*
*Pasadena, CA 91105*

Date: 2/23/2015

Subject:  MRF Deadline

Dear CSO: Gene Sugimoto

We have received notification from Federal Occupational Health (FOH) regarding your recent contract mandatory annual health screening.  The results of the screening indicate the need for additional follow-up medical testing or information which must be provided by you to FOH if you wish to remain on the United States Marshals Service contract as a Court Security Officer.

Failure to provide this information to FOH by the date listed below will cause Inter-Con Security Systems, Inc. to take administrative actions which could include your permanent removal from the aforementioned contract.

*Please contact your medical provider to address the required follow-up testing or provide the information necessary to satisfy the FOH inquiry no later than:*

Date of Required Action: **April 24, 2015.**

Daniel Ryan/LVB
Vice President for Operations
Inter-Con Security Systems, Inc.

EXHIBIT 13

3-11-15

Mel,

My CURRENT "MEDICAL REVIEW"

REQUIRES A "SLEEP STUDY" RELATIVE

TO AN OLD (ALMOST 20 YRS. AGO) DIAGNOSIS.

PER SHARP-REES STEALY, THE SLEEP

STUDY WILL COST APPOX. $980.00

MINIMUM! THE COSTS MAY EXCEED

THIS AMOUNT BASED ON THE OUTCOME

OF THE SLEEP STUDY; FOR EXAMPLE,

Follow-Up APPOINTMENT(S) ETC.

EXHIBIT 14



## USMS MEDICAL EXPENSE PRE-AUTHORIZATION FORM
### For Additional Medical Follow-Up Request from USMS

 

CSO Last Name, First Name, MI. (Please print)     Clock Number

 

CIRCUIT and DISTRICT          FACILITY ADDRESS with City, State





Return Fax Number

CSO:  If you have not received your pre-authorization within 10 business days of your request, please call the Admin Support person for your circuit:  2nd Circuit: Ty Castellano (571-384-7026) or 9th Circuit:  Ofelia Villarreal (626-535-2235).    Inter-Con Security Systems, Inc. will not be responsible for any charges not previously authorized.  All medical expenses require pre-authorization in writing, to include office visits, tests, procedures, etc...This form does not authorize the medical clinic to directly bill Inter-Con Security Systems, Inc. for approved services.   Approved medical follow-up costs are paid by the employee and reimbursed according to proper procedure, including the Medical Expense Reimbursement Form and your receipt or other proof of payment.

Description of Expenses:  *Must include specific name of test, procedure, specialist's office visit and cost.  (For example, Cardiologist, stress test, $350.00.)*

| Description of Procedure/Office Visit | Physician | Cost |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  | **Total Cost: $** |

**CSO: Upon completion of this form, fax to 626-685-9111:**

**This section to be completed by Inter-Con Security Systems, Inc. Corporate Office:**

| Date Request Received: | Amount Authorized: |
|---|---|
| Date Authorized: | Date Authorized: |
|  | Authorization Received: |
| Comments: |  |
| Date CSO Notified: | Notified by: |
|  | Via: |

Please fax completed form and your receipts to 626-685-9111 or send to: Inter-Con Security Systems, Inc., 210 S. DeLacey Avenue, Pasadena, CA  91105

Page 1 of 1

IC-USMS Med1
Date: 12/2/2013

INTER-CON SECURITY SYSTEMS, INC IS AN EQUAL OPPORTUNITY EMPLOYER.

EXHIBIT 15

I REQUEST APPROVAL FROM INTER-CON TO PROCEED AND INCUR THIS EXPENSE FOR SUBSEQUENT REIMBURSEMENT.

GENE SAGIMOTO

EXHIBIT 16

## Melvin Roberts

| | |
|---|---|
| ‘rom: | Ofelia Villarreal |
| **Sent:** | Tuesday, March 24, 2015 10:15 AM |
| **To:** | Melvin Roberts |
| **Subject:** | RE: Medical Pre Authorization |

I have forwarded to Dan for approval since Bret is traveling. I did advise that this had been pending approval for two weeks now. I'll advise if and once I get it back.

Thank you,
**Ofelia Villarreal**

**From:** Melvin Roberts
**Sent:** Tuesday, March 24, 2015 9:17 AM
**To:** Ofelia Villarreal
**Subject:** FW: Medical Pre Authorization

Good morning. Roughly how long does an approval or a denial take?

**From:** Melvin Roberts
**Sent:** Monday, March 16, 2015 9:46 AM
**To:** Bret Lockhart
**Subject:** FW: Medical Pre Authorization

Hello Bret, do authorizations take a few days?

**From:** Melvin Roberts
**Sent:** Wednesday, March 11, 2015 11:49 AM
**To:** Bret Lockhart
**Subject:** Medical Pre Authorization

**Melvin Roberts**

| | |
|---|---|
| From: | Ofelia Villarreal |
| Sent: | Tuesday, March 31, 2015 10:12 AM |
| To: | Melvin Roberts |
| Subject: | Medical Pre-Auth. for Gene Sugimoto |
| Attachments: | CCE03112015_0001.pdf |

Hi Melvin, here you go. Got it back this morning. the attachment is not signed but we can attached the email below where it indicates by Dan Ryan that it has been approved.
Once this is complete, please provide an expense report along with supporting documents to submit to accounts payable for reimbursement.


Thank you,
Ofelia Villarreal

**From:** Dan Ryan
**Sent:** Tuesday, March 31, 2015 10:08 AM
**To:** Bret Lockhart; Ofelia Villarreal
**Subject:** FW: Medical Pre-Auth. for Gene Sugimoto

Approved

**From:** Ofelia Villarreal
**Sent:** Tuesday, March 31, 2015 10:20 AM
**To:** Dan Ryan
**Cc:** Bret Lockhart
**Subject:** RE: Medical Pre-Auth. for Gene Sugimoto

Haven't heard back yet in regards to the attached pre-auth for Sugimoto. Please advise if approved.

Thank you,
Ofelia Villarreal

**From:** Ofelia Villarreal
**Sent:** Tuesday, March 24, 2015 9:19 AM
**To:** Dan Ryan
**Cc:** Bret Lockhart
**Subject:** Medical Pre-Auth. for Gene Sugimoto

Please advise if the attached is approved. It is for Sugimoto, Gene for a total of $980.00. That this has been pending approval for two weeks now and Mr. Gene needs to complete his MRF.


**Ofelia Villarreal**
**USMS 9th Circuit Administrative Coordinator**

1

**Melvin Roberts**

From:                      Ofelia Villarreal
Sent:                      Wednesday, April 01, 2015 10:40 AM
To:                        Melvin Roberts
Subject:                   RE: Medical Pre-Auth. for Gene Sugimoto

I don't blame him. Just playing it safe.  Take care.

Thank you,
Ofelia Villarreal

**From:** Melvin Roberts
**Sent:** Wednesday, April 01, 2015 10:39 AM
**To:** Ofelia Villarreal
**Subject:** RE: Medical Pre-Auth. for Gene Sugimoto

Thank you. Sugimoto was a little concerned about booking his appointment on an e-mail. Take care

**From:** Ofelia Villarreal
**Sent:** Wednesday, April 01, 2015 10:37 AM
**To:** Melvin Roberts
**Subject:** RE: Medical Pre-Auth. for Gene Sugimoto

Yes. that is correct.

Thank you,
Ofelia Villarreal

**From:** Melvin Roberts
**Sent:** Wednesday, April 01, 2015 10:36 AM
**To:** Ofelia Villarreal
**Subject:** RE: Medical Pre-Auth. for Gene Sugimoto

Hi Ofelia. Based on Dan's e-mail approval it is ok for Sugimoto to book his appointment?

**From:** Ofelia Villarreal
**Sent:** Tuesday, March 31, 2015 10:12 AM
**To:** Melvin Roberts
**Subject:** Medical Pre-Auth. for Gene Sugimoto

Hi Melvin, here you go. Got it back this morning. the attachment is not signed but we can attached the email below where it indicates by Dan Ryan that it has been approved.
Once this is complete, please provide an expense report along with supporting documents to submit to accounts payable for reimbursement.

Thank you,

1

EXHIBIT 17

# Memorandum

April 6, 2015 (monday)

To:      Melvin Roberts, District Supervisor, Southern District of California

From:   Gene J. Sugimoto, Court Security Officer (CSO), Southern District of California

Re:      Request to Extend the Medical Review Due Date to June 29, 2015


Attached is a letter to me from Mr. Dan Ryan at IC Security Systems, Inc. advising me that the Office of the Federal Occupational Health requires that I submit a medical follow-up exam.  Mr. Ryan's letter instructs me to complete and submit the necessary documents of the required action by **April 24, 2015.**

I have been in contact with my medical provider (Sharp Rees-Stealy Medical Centers), to comply with the required action which is a "Sleep Study" relative to a sleep apnea diagnosis.  Sharp has advised me that I must first report for an initial consultation with a Pulmonary Specialist after which a Sleep Study will be scheduled.  Subsequent to the Sleep Study, a second consultation with the specialist will be required to review the results of the study and prescribe any treatment if necessary.  **Sharp has advised that the earliest initial consultation can be on May 28, 2015.**  Since there will be two more appointments after this initial consultation, I request that the "Due Date" to complete this action be extended to June 29, 2015.

Your assistance in this matter is greatly appreciated.

EXHIBIT 18

**Subject:**   Re: Medical Re evals

**From:**   Robert Lopez (123bolo2595@gmail.com)

**To:**   MCook6@san.rr.com;

harem4@cox.net; wday619@aol.com; rwdonalds@yahoo.com; ckodadek@sbcglobal.net; dhreed1081@yahoo.com; deron.g.smith@gmail.com; Drhodes279@gmail.com; gmahaff@gmail.com; gjsharpe9415@cox.net; gysugi@sbcglobal.net; jcook947@hotmail.com; jrredsox17@yahoo.com; jmulvey@san.rr.com; jjvretired@yahoo.com; yackydo123@gmail.com; Johnlernaj@aol.com; tatagarcia1175@yahoo.com; matt.grace@att.net; sdmel44@att.net; rborg40@cox.net; lookslikdi@cox.net; sharkrim3@cox.net; gatorrace286@yahoo.com; cso.dawson@gmail.com; tpeltekian@hotmail.com; wcruzen@gmail.com; ycollins@cox.net; bradbickel@cox.net; mrmrscota@yahoo.com; sedonia@gmail.com;

**Cc:**   sonnybear49@yahoo.com; Nancw48@gmail.com; gfurby@cox.net; acampa@cox.net; sullivang123@yahoo.com; brady018@yahoo.com; 1chrisvon@cox.net; novakpv@netscape.net; mac-bunday@cox.net; hodgesfive@sbcglobal.net; gckathan@gmail.com; linneydan@gmail.com; flessig@hotmail.com; rgellatly@roadrunner.com; coloncalle8@yahoo.com; mgreina@cox.net; melopolo123@yahoo.ca; thebadgepi@cox.net; aka7@aol.com; pistolpackinmama7@hotmail.com; sgtnovak@sbcglobal.net; havasu26@ymail.com; kab@verizon.net; evjoness@hotmail.com; gem21girl@hotmail.com; prgarcia123@gmail.com; sevennorasixfive@live.com; skyman4@cox.net; olimex1@hotmail.com; steve.mcdonald@rocketmail.com;

**Date:**   Tuesday, May 12, 2015 8:02 PM

Today I received a MRF for audio.... This is first time in 10 yrs that I've got one for audio!!!!

Sent from my iPhone

> On May 12, 2015, at 7:57 PM, Mark Cook <MCook6@san.rr.com> wrote:
>
> To all concerned,
>
> It was brought to my attention that in the last two days 10 people received medical re eval forms. I understand that there are privacy issues with these but if possible I would like to know what the reasons are for the re evaluations. I was told last week that the Oregon office received 6 re evals. Yesterday Las Vegas told me that several of their people received the forms. It seems like most of the requested tests are for the treadmill. And, it seems like the USMS is now targeting CSOs over the age of 60. This might be a way to thin the herd but I'm not actually sure of their reasons for this. I did hear a rumor that they didn't want people like Eddie Hughes or Rich Borzych in our group. For the newer people they were great guys but were pretty old and I would guess the USMS felt they couldn't do well in a fight. The union is looking at the nationwide blitz on our CSO program and they would like to know the reasons for the re eval requests.
>
> For those who did receive the forms please remember what they did to Gene and Bob. If you choose to jump through their hoops please keep a timeline of all you do. This could be a great help if a grievance is needed. Watch their dates and act accordingly. They seems to have no trouble with dropping someone from the ranks even when we are so shorthanded and when it is not the fault of the CSO. Their timeframe for getting an appointment with a medical specialist is ridiculous and it seems that they are now reluctant to grant extensions. Please be careful.
>

> Good luck to all,
>
> Mark

EXHIBIT 19



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

131 M Street, N. E., Suite 4NW02F
Washington, D. C. 20507
Intake Information Group (800) 669-4000
Intake Information Group TTY (800) 669-6820
Washington Status Line (866) 408-8075
Washington Direct Dial (202) 419-0713
TTY (202) 419-0702
FAX (202) 419-0740
Website: www.eeoc.gov

Charge Number: 488-2016-00082

Charging Party:                    Gene Sugimoto
                                   12790 La Tortola
                                   San Diego, CA 92129

Respondent:                        Inter-Con Security Systems Inc.
                                   210 South De Lacey Ave
                                   Pasadena, CA 91105

## DETERMINATION

Under the authority vested in me by the Equal Employment Opportunity Commission ("the Commission" or "the EEOC"), I issue the following determination as to the merits of the above cited charge filed under the Americans with Disabilities Act of 1990, as amended ("ADA").

Timeliness, deferral, and all other requirements for coverage have been met.

Charging Party alleges that Respondent discriminated against him due to his disability by subjecting him to unnecessary rigorous medical testing by the U.S. Marshal Service and/or Federal Occupational Health, and discharging him due to his disability, in violation of the ADA.

Respondent states Charging Party was subjected the medical testing based on the U.S. Marshal Service direction, and that the Charging Party was removed from his job working as a Court Security Officer after failing to complete the tests in a timely manner. Respondent did not object to the U.S. Marshal Service direction that the Charging Party be removed from his job working as a Court Security Officer, nor did Respondent provide the U.S. Marshal Service with supplemental medical information which would have established that Charging Party was medically qualified to work. The investigation finds Respondent similarly discharged or placed on unpaid leave due to their disabilities a class of Court Security Officers nationwide who were qualified to do the job with or without accommodation from at least 2013 to present.

Based on the foregoing, I find there is reasonable cause to believe that Respondent discriminated against Charging Party in violation of the ADA when it subjected him to an unnecessary medical examination and discharged him, even though he could perform the essential functions of the job with or without accommodation.

Upon finding reasonable cause that unlawful employment practices have occurred, the Commission attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Conciliation is Respondent's opportunity to voluntarily remedy the unlawful employment practices found to have occurred. Ultimately, any conciliation agreement must be acceptable to the Commission. The confidentiality provisions of sections 706 and 709 of Title VII, incorporated into the ADA through section 107 and Commission Regulations, apply to information obtained during conciliation discussions.

If Respondent fails to engage in conciliation, or if the Commission determines, in its sole discretion, that conciliation has failed, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation discussion.

You are reminded that Federal law prohibits retaliation against persons who have exercised their right to inquire or complain about matters they believe may violate the law. Discrimination against persons who have cooperated in Commission investigations is also prohibited. These protections apply regardless of the Commission's determination on the merits of the charge.

On Behalf of the Commission.

MAY 2 5 2018

Date

Mindy E. Weinstein
Acting Director

PLT000211

EXHIBIT 20





## **Notification of Termination**

Name: Gene Sugimoto                           Employee No. 0100133

Termination Date: 4/27/2015

Type of Termination: Involuntary

I have my final paycheck, received the Notice to Employee As to Change in Relationship, Notice to Terminating Employee (HIPP), and California's Programs for the Unemployed.

Signature: _____   Date: _May 1, 2015_

EXHIBIT 21

# Memorandum                                    April 20, 2015

To:     Melvin Roberts, District Supervisor, Southern District of California
        Inter-Con Security, U.S. Marshal's Service and the Office of Federal
        Occupational Health

From:   Gene J. Sugimoto, Court Security Officer (CSO), Southern District of California

Re:     Denial of Request to Extend the Medical Review Due Date to June 29, 2015

On April 17, 2015 I was advised by District Supervisor Mel Roberts that my request for
extension has been denied because I have "had it for a while". I do not understand that
reason and thus I am responding with this chronology to illustrate that I have complied in
a timely manner with all actions requested and that I have not "had it for a while"!

1.  March 2, 2015: I received notification of the Medical Review even though my
    personal physician Dr. David Spees and his colleague a Pulmonary Specialist,
    Dr. Lee both addressed this issue back in December 2014, to which I-C,
    USMS nor the FOB ever acknowledged even the receipt or comment of that
    report.

2.  During the week of March 2, I contacted Dr. Spees and apprised him this
    circumstance.

3.  March 9: I provided Dr. Spees with the documentation of the Medical Review
    requiring a Sleep Study.

4.  March 11: I was notified by Dr. Spees' office that the Sleep Study would cost
    a minimum $980.00, barring any further consultations or follow-up
    examinations. They also made a referral for me to the Pulmonary
    Department.

5.  March 11: I made a request to Inter-Con Security Systems through District
    Supervisor Roberts requesting approval to make a minimum $980.00 "out-of-
    pocket" medical expense for future reimbursement.

6.  March 12: I was contacted by the Sharp Rees-Stealy Pulmonary Dept. to
    schedule the necessary appointment(s). I advised them that I was awaiting
    approval from my employer/Inter-Con to go forward with the appointment(s)
    and incur the expenses. The Pulmonary Dept. acknowledged and advised that
    they would wait further contact from me.

7.  April 1, 2015: I received approval to proceed with the appointment(s) and
    incur the expenses. It should be noted that this was a **delay of 3 weeks and
    was beyond my control.**

8.     April 2: I contacted the Pulmonary Dept. to make the appointment(s).  They advised me that I had taken too long, (a result of waiting 3 weeks), and they had removed me from their pending list.   They further advised that I must again have Dr. Spees make another referral.  I subsequently contacted Dr. Spees' office requesting another referral and explained what had happened.

9.     April 3: Dr. Spees' office contacted me and advised that the 2nd referral had been made to the Pulmonary Dept.

10.    April 3: I contacted the Pulmonary Dept to make my appointment.  I was advised that due to the unavailability of Dr. Lee and scheduling constraints, the **"earliest possible date for the 'initial consultation' is May 28, 2015".**  I was further advised that subsequent to the "initial consultation that the sleep study and any other appointments if necessary would be made".

11.    April 6: Foreseeing that this Medical Review process can not be completed by the required due date of April 24, 2015, I provided a memorandum to District Supervisor Roberts requesting an extension of the due date to June 29, 2015, anticipating that this new date may be adequate time to complete the action.

It should be noted that I have complied and completed all action, previous and current, as required and in a timely manner.  The scheduling of appointments and availability or unavailability of the Doctor at Sharp Rees-Stealy Medical Centers is beyond the control of me, Inter-Con, the USMS and the FOB.  **To deny my request for an extension to complete the Medical Review is unfair and unreasonable!**

Your reconsideration in this matter is greatly appreciated.


Gene J. Sugimoto
April 20, 2015

EXHIBIT 22



# SHARP. Rees-Stealy Medical Group

## Progress Note

**Name:** SUGIMOTO, GENE  
**MRN#:** 1800773

**DOB:** 06/14/1948  
**Gender:** M

**Note Owner:** STEPHEN H. LEE M.D.  
**Specialty:** Pulmonary Medicine  
**Date of Encounter:** 05/05/2015

**Patient**  
GENE SUGIMOTO          DOB: Jun 14 1948          Gender: M  
SHC#: 102383829

Provider: STEPHEN LEE  
DOV: 05/05/2015.  
**Chief Complaint**  
• Sleep apnea evaluation  
**HPI**  
LAST SEEN: May 8, 2009  
I previously saw Mr. Sugimoto in May 2009 for evaluation of sleep apnea. At that time, the patient stated that he had been diagnosed with sleep apnea more than 10 years prior to his visit with me. He reported that he had tried CPAP for a couple weeks, but that he could not tolerate it whatsoever. When I saw him for evaluation back then, I did not think a repeat sleep study was indicated based on the symptom history reported at that time. He is now back here for reevaluation. It is a complicated story, but the patient states that he was asked by his employer to submit documentation about his sleep apnea. Due to various issues, including the time it took to get a clinic appointment with me, he was not able to meet the deadline set by his employer to submit paperwork. He was then terminated from his job as a court security officer. He is now in the process of trying to appeal this.

The patient presented a copy of a "Medical Review Form" from the "Judicial Security Division" requesting information about the diagnosis, initial AHI, and severity of his sleep apnea. Is also requesting information about the recommended treatment, whether he has been compliant with therapy, and compliance information.

The patient's weight is 15 pounds less than it was when I last saw him in May 2009. He snores, but his wife reports that his snoring is less than it was before. There have been no reported witnessed apneas by his wife. He does not wake up gasping or choking for air in the middle the night. Overall, he feels like his sleep quality is good. When he wakes up in the morning, he is "ready to go." He denies any problems whatsoever with drowsiness during the day. He denies any work or social impairments because of sleepiness. He normally goes to sleep between 10:30-11:30 PM and gets up for the day between 7-7:30 AM. He does not drink alcohol except on rare occasions. He does not take any sleeping pills. He does not wake up with morning headaches. He denies any problems with his memory or concentration.  Epworth Sleep Scale score 3-4.  
**Current Meds**  
Multivitamins TABS;TAKE 1 TABLET DAILY.; RPT  
Aspirin 81 MG Oral Tablet;; RPT  
Fish Oil CAPS;TAKE 2 CAPSULE DAILY; RPT  
Accu-Chek Multiclix Lancets Miscellaneous;check once in am, if bg> 126, recheck in pm; Rx  
Accu-Chek Compact Test Drum In Vitro Strip;Test fasting in the am, if blood glucose is greater than 126mg/dl test in pm or as directed.; Rx  
Accu-Chek Compact Plus Care KIT;check fasting blood sugar in the morning, if >126, retest before dinner.; Rx  
Accu-Chek Multiclix Lancet Dev KIT;test fasting in am, if greater than 126, test again in evening; Rx  
Losartan Potassium-HCTZ 50-12.5 MG Oral Tablet;TAKE 1 TABLET DAILY for blood pressure and kidneys; Rx

**This document is privileged and confidential, and is intended for those individuals personally involved in the care of individual patients who may be identifiable from this information. All other use or disclosure is strictly prohibited unless specifically and legally authorized.**



# SHARP. Rees-Stealy Medical Group

**Patient:** SUGIMOTO, GENE
**MRN:** 1800773

**Date of Encounter:** 05/05/2015

Lisinopril-Hydrochlorothiazide 20-12.5 MG Oral Tablet;TAKE 2 TABLETS DAILY FOR  BLOOD PRESSURE; Rx
Atorvastatin Calcium 20 MG Oral Tablet;TAKE 1 TABLET DAILY for cholesterol; Rx
Verapamil HCl ER 300 MG Oral Capsule Extended Release 24 Hour;TAKE ONE CAPSULE BY MOUTH EVERY DAY FOR
BLOOD  PRESSURE; Rx
Allopurinol 300 MG Oral Tablet;TAKE 1 TABLET DAILY to prevent gout.; Rx.

**Allergies**
No Known Drug Allergy.

**Med/Allergy Rec:**
Meds and allergies reconciled, including those medications given at discharge where applicable.  The patient's medication list has
been updated accordingly.

**ROS**
+ Snorer, refreshed upon awakening
- Witnessed or reported apneas, fatigue, daytime drowsiness, memory or concentration problems, morning headaches.

**Vital Signs**
 Recorded by HERNANDEZ,MARIBEL on 05 May 2015 01:59 PM
BP:122/69,
HR: 81 b/min,
Weight: 226 lb ,
BMI Calculated: 31.52 ,
BSA Calculated: 2.22 ,
O2 Sat: 94 (%SpO2),  RA.
Neck circumference 16 inches.

**Physical Exam**
GEN: pleasant and comfortable; HEENT: + facial hair, Mallampati 2, tonsils 2+ bilaterally, OP clear, sclerae anicteric, no
cervical or supraclavicular nodes palpated; CHEST: CTAB without adventitious sounds; CV: RRR, normal S1S2, no murmur;
ABD: Not examined; MSK: no clubbing or edema; SKIN: no obvious rashes seen; NEURO: Alert and appropriate, normal gait.

**Assessment**
Mr. Sugimoto has a history of having been diagnosed with sleep apnea in the distant past (another provider). He did not tolerate
CPAP therapy. When I saw him in May 2009, I did not think that there was any indication to proceed with another sleep study.
Based on my evaluation today, I still do not think that there is any indication to proceed with a sleep study. Although he snores,
he has not been told that he stops breathing at night. He has no other symptoms that are compatible with sleep apnea such as poor
quality sleep, unrefreshing sleep, or daytime drowsiness. In my medical opinion, there is no need to proceed with a sleep study at
this time.

It is not clear from the "Medical Review Form" provided by his employer whether they are asking me to have the patient perform
an overnight sleep study whether I think he needs one or not. Even if he was to proceed with a sleep study, there is no way I
would be able to provide the other information that they are requesting such as the patient's compliance with and efficacy of
therapy within the expected time frame (by the end of this month). At best, I could probably have the sleep study done within the
next couple weeks, if it is absolutely necessary.

**Plan**

    **This document is privileged and confidential, and is intended for those individuals personally involved in the care of
individual patients who may be identifiable from this information. All other use or disclosure is strictly prohibited unless
specifically and legally authorized.**



**SHARP** **Rees-Stealy Medical Group**

**Patient:** SUGIMOTO, GENE
**MRN:** 1800773

**Date of Encounter:** 05/05/2015

A copy of this consultation note will be mailed to the patient who will then forward it to his employer. If a sleep study is being required by the employer, the patient will let me know.
**Signature**
Electronically signed by : STEPHEN H LEE  M.D.; 05/05/2015 3:42 PM PST; Author.

Stephen H. Lee, M.D.
Pulmonary
2929 Health Center Drive
San Diego, CA 92123
(858) 939-6570

**This document is privileged and confidential, and is intended for those individuals personally involved in the care of individual patients who may be identifiable from this information. All other use or disclosure is strictly prohibited unless specifically and legally authorized.**

EXHIBIT 23

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974   See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 488-2016-00082 |

| California Department Of Fair Employment & Housing | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Gene Sugimoto** | **(858) 218-5228** | **06-14-1948** |

| Street Address | City, State and ZIP Code |
|---|---|
| **12790 La Tortola, San Diego, CA 92129** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **INTER-CON SECURITY SYSTEMS INC** | **500 or More** | **(626) 535-2200** |

| Street Address | City, State and ZIP Code |
|---|---|
| **210 S. De Lacey Ave.,  Pasadena, CA 91105** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **11-18-2014** | **04-27-2015** |
| ☐ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I.   I was hired on or about November 2, 2013 as a Courts Security Officer when Inter-Con Security Systems Inc. took over the US Marshall's contract from Akal, my previous employer.  On or about November 18, 2014, I was required to provide a full detailed report of my disability to H. Goldhagen with the Federal Occupational Health.  On or about December 15, 2014, I provided Goldhagen a medical report finding me fit for duty.  On or about January 30, 2015, Goldhagen insisted that I needed to provide a full detailed medical report.  On or about March 2, 2015, I was given an April 24, 2015 deadline by Melvin Roberts, District Supervisor for Inter-Con, to comply with Goldhagen's request.  On or about April 6, 2015, I made a request to Roberts for an extension of my deadline until June 29, 2015, but the extension was denied.  On or about April 27, 2015, Goldhagen found me unfit for duty and I was terminated by Roberts.

II.  No reason was given by Goldhagen on requesting new medical information that had not been requested in prior years.  No reason was given for denying my request for an extension to the deadline to provide the requested medical information.  The reason given by Roberts for my termination was noncompliance.

III. I believe that I have been discriminated against based on my disability and record of disability in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Dec 16, 2015 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date                 Charging Party Signature | RECEIVED<br>DEC 16 2015<br>EEOC/SDLO |

EXHIBIT 24



January 22, 2016

**VIA Digital Charge Filing System**

**INTER-CON**
SECURITY SYSTEMS, INC.

U.S. Equal Employment Opportunity Commission
San Diego Local Office
555 W. Beech Street
Suite 504
San Diego, CA 92101

210      Lacey Ave
Pasadena, CA 91106

**SUBJECT:   Sugimoto/Inter-Con Security Systems Inc.**
**EEOC Charge No. 488-2016-00082**

Mr. Douglass:

Phone  626 / 535-2200
Fax  626 / 685-9111
corporate@icsecurity.com

Inter-Con Security Systems, Inc. ("Inter-Con) submits the following Statement of Position in response to the Charge of Discrimination (the "Charge") filed by Mr. Gene Sugimoto ("Complainant") with the U.S. Equal Employment Opportunity Commission ("EEOC").[1] Complainant alleges that he was discriminated against based on disability.  As set forth fully herein, these allegations are without merit.

• Asia •

There is no evidence to indicate that Complainant was discriminated against due to a disability.  Inter-Con takes a tough stance against all forms of discrimination. As explained in detail below, Complainant was removed from the schedule at the request of the U.S. Marshals Service ("USMS") after his contract required annual medical exam revealed information affecting his ability to perform the essential

• Latin

[1] The information and supporting documentation contained herein, and that which may be submitted hereafter, is strictly confidential and not to be used for any purpose other than the resolution of the current Charge or disseminated to any person, including Complainant, without prior written approval from Inter-Con.  *See* 42 U.S.C. §§ 2000e-5(b); 2000e-8(e); 29 C.F.R. §§ 1601.11, 1601.26; 56 Fed. Reg. 10847.  This Statement of Position is based upon our understanding of the facts and the information reviewed thus far.  Although there has not been an opportunity for formal discovery or a complete formal investigation, this response is submitted for the purpose of aiding the Department in its investigation and facilitating the informal resolution of these matters.  This response, while believed to be accurate, does not constitute an affidavit or a binding statement of Inter-Con's legal position, nor is it intended to be used as evidence of any kind in any administrative or court proceeding in connection with the Charging Party's allegations.  Because additional facts likely would be uncovered through discovery or following a full investigation, Inter-Con in no way waives its right to present new or additional information at a later date, for substance or clarification.  Moreover, by responding to the Charge, Inter-Con does not waive, and hereby preserves, any and all substantive and procedural defenses that may exist to the Charge and the Charging Party's allegations.  Inter-Con requests that any efforts to contact its current managers be directed through its counsel.

IC 00601



EEOC Charge No. 488-2016-00082
January 22, 2016
Page 2

functions of his job as an armed Court Security Officer ("CSO").   Complainant was eventually disqualified from performance because he failed to submit requested medical information as required by the contract.  Inter-Con at all times acted in accordance with the direction given by USMS and did not act in a discriminatory manner.  Complainant's Charge simply has no merit and should be dismissed.

## I.   RESPONSE TO ALLEGATIONS

Inter-Con responds to each allegation listed in the Charge as follows:

**Allegation I:**  *I was hired on or about November 2, 2013 as a Courts Security Officer when Inter-Con Security Systems, Inc. took over the US Marshal's [sic] contract from Akal, my previous employer.  On or about November 18, 2014, I was required to provide a full detailed report of my disability to H. Goldhagen with the Federal Occupational Health.  On or about December 15, 2014, I provided Goldhagen a medical report finding me fit for duty.  On or about January 30, 2015, Goldhagen insisted that I needed to provide a full detailed medical report. On or about March 2, 2015 I was given an April 25, 2015 deadline by Melvin Roberts, District Supervisor for Inter-Con, to comply with Goldhagen's request.  On or about April 6, 2015, I made a request to Roberts for an extension of my deadline to June 29, 2015, but the extension was denied.  On or about April 27, 2015, Goldhagen found me unfit for duty and I was terminated by Roberts.*

**Response:**

Inter-Con is a provider of physical security services to a variety of public and private entities across the country and around the world.  Inter-Con's clients rely on the Company to provide security and protection to their facilities, invitees and employees.  One such client is the USMS.  Complainant is a CSO performing security services in federal court facilities pursuant to a contract between Inter-con and the USMS.   Inter-Con is informed and believes that Complainant has worked as a CSO with predecessor contractors since 2007; however, Complainant was hired by Inter-Con on November 1, 2013 when Inter-Con became a service provider to USMS in the second judicial circuit.

28 U.S. Code § 566 provides as follows:

It is the primary role and mission of the United States Marshals Service to provide for the security and to obey, execute, and enforce all orders of the United States District Courts, the United States Courts of Appeals, the Court of International Trade, and the United States Tax Court, as provided by law.

The USMS Judicial Security Division is responsible for protecting federal courthouses across the country. One of USMS's missions is to provide a safe environment in which federal courts can conduct their business without fear of violence, crime or disorder.  CSOs have a crucial and highly visible role in support this USMS mission. They are usually the first contact



EEOC Charge No. 488-2016-00082
January 22, 2016
Page 3

visitors have with the federal courts and they are usually the first line of defense in a federal court facility. Visitors and federal employees perceive the CSOs to be an integral part of the USMS mission.

At the time officers were selected for hire for assignment on the USMS contract, they were each provided with orientation packages including, among other things, applicable USMS and Inter-Con policies. Complainant acknowledged the Inter-Con Equal Employment Opportunity Policy ("EEO Policy") at his time of hire. See, **Exhibits at Sugimoto000001-2.** The Conditions of Court Security Officer Eligibility, USMS form CSO 004, is a document acknowledged annually by CSOs describing the annual qualification requirements, including medical requirements, under the contract. See, **Sugimoto000003.**

The Conditions of Court Security Officer Eligibility, state in part:

> I acknowledge and understand that my eligibility to perform services under the contract will be determined by the USMS based upon meeting all CSO contract qualifications standards. These qualifications include successful completion of an initial and yearly medical examination; weapon qualification test; a background investigation; and, other CSO qualification standards noted in the contract.

> I acknowledge and understand my suitability and eligibility to perform as a CSO will be an annual requirement, or deemed as necessary by the Government. I acknowledge and agree that if I fail, at any time, to meet any of the CSO qualification standards, I will be prohibited from performing services under the USMS contract. **Sugimoto000003.**

It is the policy of the USMS to ensure a law enforcement work force that is medically able to safely perform the required job functions. Operational employees are required to meet medical standards and physical requirements and are classified as either qualified or unqualified based on review of periodic medical examination results. A list of essential job functions for the CSO position is attached at **Exhibits at Sugimoto 000021.**

Under the USMS contract, Inter-Con cannot allow a CSO to perform contract duties unless he/she is deemed medically qualified by the USMS. This is a yearly clearance. A clearance from a personal physician to return to work is not a contract medical qualification. While the reports and clearances of private physicians are reviewed by the USMS to ensure the CSOs meet the contract medical requirements, it is the Government who makes the actual determination on medical qualifications. See, **Sugimoto000009-20** for the physical and medical standards and medical examination process of the USMS contract. "The Contractor shall not allow any individual to perform under this contract until the individual's qualification status has been determined by the Federal Occupational Health (FOH) <u>and</u> a written approval has been granted by the Chief, OCS. **Exhibits at Sugimoto000009** (emphasis original).

In June 2014, Complainant underwent his annual medical examination. The Judicial Security Division Reviewing Medical Officer, H. Goldhagen, MD, MPH, deferred Complainants medical determination pending further documentation from his personal physician. On



EEOC Charge No. 488-2016-00082
January 22, 2016
Page 4

November 18, 2014, FOH issued a Medical Review Form ("MRF") detailing the additional information required to determine whether Complainant could perform the essential functions of the CSO position. Inter-Con received the MRF on December 1, 2014 and it was issued to Complainant who acknowledge receipt thereof on December 2, 2014. **Sugimoto000004-5.** CSOs are routinely given a 60 days to comply with an MRF. See, **Sugimoto000012-13** (C9.3.6 and C9.3.7).

Inter-Con admits that Complainant submitted medical documentation in response to the November 18, 2014 MRF on or about December 15, 2014. However, on January 30, 2015, FOH issued a second MRF indicating that Complainant did not submit all medical documentation as requested in the November 18, 2014 MRF. Inter-Con received the second MRF on February 23, 2015 and it was served on Complainant who acknowledged receipt thereof on March 2, 2015. **Sugimoto000006-7.** In accordance with contract requirements, Complainant was given a 60 day deadline to return the requested medical documentation. Although USMS could have disqualified Complainant for his failure to provide complete medical information in accordance with section C.9.3.6 of the USMS contract after the first MRF (Sugimoto000013), USMS instead gave Complainant additional time to comply by issuing the second MRF with a renewed 60 day deadline.

On or about April 2, 2015, Complainant submitted a request for extension of time to comply with the January 30, 2015 MRF which Inter-Con submitted to USMS. For reasons unknown to Inter-Con, USMS denied Complainant's request for extension. Although USMS did not provide a reason for denying the extension request, it is likely that the request was denied because Complainant had already been given a 60 day extension of time to respond when a second MRF was issued rather than a disqualification for Complainant's failure to provide complete medical documentation in response to the November 18, 2014 MRF.

Complainant did not submit the additional medical documentation requested in the January 30, 2015 MRF by the stated deadline. On April 27, 2015, Inter-Con received an email from USMS disqualifying Complainant from performance on the USMS contract for his failure to provide requested medical information such that his annual medical clearance could not be issued. Complainant alleges that he provided information from his doctors indicating that he was medically cleared to perform his duties; however, the Government disagreed and indicated that Complainant failed to provide all supplemental medical information requested in November 2014 and again in January 2015. Complainant was accommodated and given over 120 days to comply while the contract only requires that a CSO be allowed 60 days for compliance.

**Allegation II:** *No reason was given by Goldhagen on requesting new medical information that had not been requested in prior years. No reason was given for denying my request for extension to the deadline to provide the requested medical information. The reason given by Roberts for my termination was noncompliance.*

**Response:** Complainant was prohibited from working as a CSO on the USMS contract because he failed to submit medical documentation such that the Government could make a determination regarding whether he met the medical requirements under the contract. The two



EEOC Charge No. 488-2016-00082
January 22, 2016
Page 5

MRFs issued to Complainant specifically detailed the nature of the medical documentation required as well as the reason for the request. Complainant was well aware of the requirements for his annual medical clearance as he acknowledged them in the CSO 004 form he reviewed in June 2014 prior to his annual contract required physical. See, **Exhibits at Sugimoto000003** (I acknowledge and agree that if I fail, at any time, to meet any of the CSO qualification standards, I will be prohibited from performing services under the USMS contract). However, Complainant did not comply with contract requirements regarding submission of requested medical documentation.

<u>Allegation III</u>: *I believe I have been discriminated against based on my disability and record of disability in violation of the American with Disabilities Act of 1990, as amended.*

<u>Response</u>:   For the reasons stated above, Inter-Con denies Complainant was discriminated against on the basis of disability or a record of disability.

## II.   LEGAL ANALYSIS

### A.   Complainant Was the Cause of the Breakdown of the Interactive Process

USMS and not Inter-Con that controlled the medical review process and requested medical documentation from Complainant under its statutory authority to carry out the USMS mission. The EEOC has stated in its Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the ADA that when an employer (or in the case USMS) has sought documentation of a disability that is not obvious and the employee refuses to submit reasonable documentation "then s/he is not entitled to reasonable accommodation." See Hendricks-Robinson v. Excel Corp., 154 F.3d 685, 700, 8 AD Cas. (BNA) 875, 887 (7th Cir. 1998). Here, the Government requested medical documentation from Complainant to determine whether he could perform the essential functions of the CSO position and Complainant failed to provide that information despite being given over four months to do so. Additionally, USMS was entitled to make medical inquiries regarding whether Complainant could perform the essential functions of the CSO position.

Complainant caused the breakdown in the interactive process. To dialogue in good faith includes the duty to provide requested, relevant information. See, Sears, Roebuck & Co., 417 F.3d at 806 (employer not liable for failure to engage in interactive process if employee refuses to participate or withholds essential information); Templeton v. Neodata Services, Inc., 162 F.3d 617, 619 (10th Cir. 1998) (employee's failure to provide medical information "precludes her from claiming that the employer violated the ADA by failing to provide reasonable accommodation."); Tatum v. Hosp. Of the Univ. of Pa., 57 F. Supp. 2d 145, 150 (E.D. Pa. 1999) (where employer gave plaintiff numerous opportunities to produce required information, court asks: "what more should the Hospital have done?...'[o]ne cannot negotiate with a brick wall.'").

Having hit that brick wall, the Government disqualified Complainant from performance under the contract. Despite the fact that the contract only requires that CSOs be provided with a

EEOC Charge No. 488-2016-00082
January 22, 2016
Page 6

60 day compliance period to provide supplemental medical information, Complainant was accommodated and given over four months to produce the information and he failed to comply.

### B.     Inter-Con Had A Legitimate Business Purpose To Remove Complainant From The Schedule

There are no facts to support Complainant's theory that he was discriminated against as a result of a disability.   Further, there are no facts to suggest that Inter-Con went against its zero tolerance policy for discrimination and subjected Complainant to deliberate discrimination. Inter-Con has presented evidence to show that (1) Complainant was aware of the physical and medical examination requirements for CSOs assigned to the USMS contract; (2) Complainant failed to comply with those requirements although given over four months to do so; and (3) Inter-Con followed the direction of USMS in removing Complainant from performance under the contract.  Complainant cannot present any evidence to infer that Inter-Con's true reason for not allowing him to perform as a CSO was for a discriminatory purpose.

## III.   CONCLUSION

In sum, the allegations in Complainant's Charge are baseless. There is no evidence to support his claims of discrimination. For these reasons, Complainant's Charge should be dismissed upon a finding of no probable cause.  Please contact me at (626) 535-2239 or ngriffiths@icsecurity.com if you have any questions about Inter-Con's response or the documents provided.

Best Regards,

**Inter-Con Security Systems, Inc.**

Natalie Griffiths
Counsel

Enclosures

IC 00606

EXHIBIT 25

U.S. Department of Justice.
United States Marshals Service.

**Acknowledgement of Conditions of
Court Security Officer Eligibility**

INSTRUCTIONS: Applicants to become U.S. Marshals Service Court Security Officers should complete Form CSO-004. Return completed acknowledgements to the contracting company.

I, _GENE J. SUGIMOTO_ *(insert name)*, understand that my (potential) employer

_INTER-CON SECURITY_ _____ *(insert the name of the company)*, is under contract with the United States

Marshals Service (USMS) to provide security services.

I also understand _INTER-CON SECURITY_ _____ *(insert the name of the company)* has, or will hire me to work on their behalf, as a Court Security Officer (CSO), for the purposes of fulfilling its contract responsibilities with the USMS. I understand that I must not at any time, represent myself as an employee of the USMS.

I acknowledge and understand that my eligibility to perform services under the contract will be determined by the USMS based upon meeting all CSO contract qualifications standards. These qualifications include successful completion of an initial and yearly medical examination; weapon qualification test; a background investigation; and, other CSO qualification standards noted in the contract.

I acknowledge and understand my suitability and eligibility to perform as a CSO under the contract will be an annual requirement, or as deemed necessary by the Government. I acknowledge and agree that if I fail, at any time, to meet any of the CSO qualification standards; I will be prohibited from performing services under the USMS contract.

I fully understand and accept that if I am granted an "interim approval" to begin performing CSO services under the contract and subsequently fail to pass the medical standards, the weapons qualification standards or the background investigation, this approval will be revoked.

Name (Print):  _GENE J. SUGIMOTO_

Signature:  _[signature]_

Date:  _06-28-2014_

Submission Instructions: The contracting company should submit completed forms to the United States Marshals Service, 2604 Jefferson Davis Highway, Alexandria, VA 22301, Attention: JSD/OCS/Applications & Qualifications Branch (CS-3, 4th Fl.). Retain a copy for your records.

Form CSO-004
Rev. 03/12